Mr. Justice Goldberg
delivered the opinion of the Court.
This appeal presents the question of whether a person who has testified under subpoena before a congressional committee investigating the operation of the Antitrust Acts has testified in a “proceeding, suit, or prosecution under said Acts” thereby acquiring immunity from prose *228 cution under the Act of February 25, 1903, 32 Stat. 854, 904.[1]
The facts are undisputed. On September 6, 1962, appellee, along with other individuals and corporations, was indicted on charges of conspiring to fix milk prices and to defraud the United States, in violation of § 1 of the Sherman Act, 26 Stat. 209, as amended, 15 U. S. C. § 1, and the Conspiracy Act, 62 Stat. 701, 18 U. S. C. § 371. Appellee moved to dismiss the indictment on the ground, inter alia, that the prosecution was barred under the immunity provision of the Act of February 25, 1903, because he had previously testified before a subcommittee of the House Select Committee on Small Business concerning matters covered by the indictment. The Government opposed the motion to dismiss contending that the immunity provision of the Act of February 25, 1903, extends only to judicial proceedings and not to hearings before congressional committees.[2] The District Court for the District of Massachusetts, rejecting the Government’s contention, dismissed the indictment against appellee. The Government appealed the dismissal directly to this Court pursuant to the Criminal Appeals Act, 62 Stat. 844, as amended, 18 U. S. C. § 3731. Probable jurisdiction was noted. 375 U. S. 809.
We hold, for the reasons stated below, that the immunity provision of the Act of February 25, 1903, applies only to persons testifying in judicial proceedings, not to persons testifying before committees or subcommittees of Congress.
The immunity provision in question was enacted as part of an appropriations act which declared:
“That for the enforcement of the provisions of the Act entitled ‘An Act to regulate commerce,’ *229 approved February fourth, eighteen hundred and eighty-seven, and all Acts amendatory thereof or supplemental thereto, and of the Act entitled 'An Act to protect trade and commerce against unlawful restraints and monopolies/ approved July second, eighteen hundred and ninety, and all Acts amenda-tory thereof or supplemental thereto, and sections seventy-three, seventy-four, seventy-five, and seventy-six of the Act entitled 'An Act to reduce taxation, to provide revenue for the Government, and other purposes/ approved August twenty-seventh, eighteen hundred and ninety-four, the sum of five hundred thousand dollars, to be immediately available, is hereby appropriated, out of any money in the Treasury not heretofore appropriated, to be expended under the direction of the Attorney-General in the employment of special counsel and agents of the Department of Justice to conduct proceedings, suits, and prosecutions under said Acts in the courts of the United States: Provided, That no person shall be prosecuted or be subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may testify or produce evidence, documentary or otherwise, in any proceeding, suit, or prosecution under said Acts. . . 32
Stat. 903-904. (Emphasis added.)
By any common-sense reading of this statute, the words “any proceeding, suit, or prosecution under said Acts” in the proviso plainly refer to the phrase “proceedings, suits, and prosecutions under said Acts in the courts of the United States,” in the previous clause. The words “under said Acts” confirm that the immunity provision is limited to judicial proceedings, which are brought “under” specific existing acts, such as the Sherman Act or the Commerce Act. Congressional investigations, although they may relate to specific existing acts, are not *230 generally so restricted in purpose or scope as to be spoken of as being brought “under” these Acts.[3]
In Hale v. Henkel, 201 U. S. 43, decided only three years after the passage of the Act of February 25, 1903, this Court construed that Act in accordance with the plain meaning of its words as follows:
“While there may be some doubt whether the examination of witnesses before a grand jury is a suit or prosecution, we have no doubt that it is a ‘proceeding’ within the meaning of this proviso. The word should receive as wide a construction as is necessary to protect the witness in his disclosures, whenever such disclosures are made in pursuance of a judicial inquiry, whether such inquiry be instituted by a grand jury, or upon the trial of an indictment found by them.” Id., at 66. (Emphasis added.)
We conclude, therefore, that as enacted the Act of February 25, 1903, applies only to judicial proceedings.[4]
*231 Appellee does not really dispute this. His basic contention, which is not accepted by any member of the Court,[5] is that the 1906 immunity statute[6] amended the Act of February 25, 1903, to extend immunity to persons who testified in nonjudicial as well as judicial proceedings. He does not contend that the 1906 statute, by its terms, so amended the 1903 Act. He offers the following interpretation of the events leading up to the enactment of the 1906 statute in support of the contention that the 1903 Act was amended by implication to extend to nonjudicial proceedings. In the case of United States v. Armour & Co., 142 F. 808, decided three years after the enactment of the 1903 Act, the United States District Court for the Northern District of Illinois held that certain defendants had been immunized from prosecution under the Antitrust Laws by giving unsubpoenaed and unsworn testimony in a nonjudicial investigation con *232 ducted by the Commissioner of Corporations,[7] an official of the Department of Commerce and Labor.[8] Congressional reaction to this decision was immediate and adverse, and within four months Congress enacted the 1906 immunity statute.[9] This statute specifically limited immunity under existing immunity statutes to persons testifying under oath and in obedience to subpoena.[10] Appellee contends that the purpose of Congress in enacting the 1906 statute was to remedy the objectionable features of the Armour decision, and that since the statute did not “remedy” the court’s holding that immunity could be obtained by testifying in a nonjudicial proceeding, it follows that Congress did not regard that holding as objectionable. He asks us to conclude, therefore, that *233 “proceeding” as used in the immunity provision of the Act of February 25, 1903, must now be read to include nonjudicial as well as judicial proceedings.
This argument erroneously assumes that the Armour decision rested on a construction of “proceeding, suit, or prosecution” in the immunity provision of the Act of February 25, 1903. A reading of that decision reveals, however, that it rested primarily on the Commerce and Labor Act, which contained a specific grant of immunity to persons who testified in investigations, admittedly non judicial, conducted by the Commissioner of Corporations.[11] In deciding the Armour case, the court felt it *234 “necessary to look into the purposes of Congress in passing the commerce and labor act in order that the court may determine what construction will best carry out the legislative intent.” 142 F., at 819. After a detailed analysis of that statute and its history, the court concluded that the Commerce and Labor Act was dispositive of the case and that defendants were entitled to immunity thereunder. Following this conclusion, the judge added a brief paragraph in which he said, without analyzing (or even quoting) the language or history of the Act of February 25, 1903, that he was “of opinion” that the defendants would also be entitled to immunity under that Act as well. Id., at 826.[12] In the very next para *235 graph, however, the judge again described the opinion as resting on “the construction here given to the commerce and labor law . . . Ibid.
The controversial feature of the Armour decision, and the only one which Congress was interested in remedying, was the holding that unsubpoenaed and unsworn testimony came within “the purposes of Congress in passing the commerce and labor act . . . 142 F., at 819. Congress wanted to be certain that persons anticipating indictment could not immunize themselves from prosecution by volunteering to give unsworn testimony.[13] There was nothing controversial about the court’s holding that immunity could result from testimony given in an investigation conducted by the Commissioner of Corporations, since the Commerce and Labor Act specifically granted immunity for testimony given in such an investigation.
It is not at all significant, therefore, that Congress, while “remedying” the Armour holding that immunity could be obtained from testimony which was unsworn and voluntary, did not “remedy” the holding that immunity could result from testimony given in nonjudicial investigations conducted by the Commissioner of Corporations.
*236 Congress, in enacting the 1906 statute, did not manifest any intent to enlarge the reach of the immunity provision of the Act of February 25, 1903, to include nonjudicial proceedings. The purpose of the 1906 statute was not to define the type of proceeding in which immunity, under existing statutes, could be obtained. Its sole purpose was to define the type of testimony for which immunity, under existing statutes, could be obtained. This is all Congress was asked to do by President Theodore Roosevelt in his message recommending the legislation which became the 1906 statute. In his message the President said:
“It has hitherto been supposed that the immunity conferred by existing laws was only upon persons who, being subpoenaed, had given testimony or produced evidence ....
“But Judge Humphrey [the district judge who decided the Armour case] holds that if the Commissioner of Corporations (and therefore if the Interstate Commerce Commission), in the course of any investigations prescribed by Congress, asks any questions of a person, not called as a witness, or asks any questions of an officer of a corporation, not called as a witness, with regard to the action of the corporation on a subject out of which prosecutions may subsequently arise, then the fact of such questions having been asked operates as a bar to the prosecution of that person or of that officer of the corporation for his own misdeeds. Such interpretation of the law comes measurably near making the law a farce, and I therefore recommend that the Congress pass a declaratory act stating its real intention.” H. R. Doc. No. 706, 59th Cong., 1st Sess.
The limited purpose of the 1906 Act is also apparent from the response made by Senator Knox, the manager of the *237 bill which became the 1906 Act,[14] to a statement made by Senator Daniel, a critic of immunity legislation. Senator Daniel said:
“I suppose that the bill under consideration as it reads now applies only to persons who testify in a judicial proceeding or to those who are responding to some body such as a Congressional committee that has the right to enforce an answer from a witness.[15]
“I should like very much to hear from the patron of this bill some statement as to the present state of the law and as to the benefits to be derived from the bill.”
Senator Knox responded as follows:
“Mr. President, the purpose of this bill is clear, and its range is not very broad. It is not intended to cover all disputed provisions as to the rights of witnesses under any circumstances, except those enumerated in the bill itself. . . .
“Mr. President, the whole purpose of this bill is to define the right of the witness as we thought it was defined in the statute which I have read, and to say, as the statute said, but to say it even more clearly and emphatically, that the immunity shall *238 only extend to witnesses who have been subpoenaed to produce books and papers or subpoenaed to give testimony. The essence of the whole act is found in lines 18, 19, and 20, on page 2, which read that these immunity provisions — only the immunity provisions under the interstate commerce act and under the Commerce and Labor act, not the general immunity that the citizen enjoys in judicial proceedings, but merely in relation to the proceedings of these two great bureaus of the Government — ‘shall extend only to a natural person.’ That is, that a corporation is not to have the benefit of the immunity provisions, but they — ‘shall extend only to a natural person who, in obedience to a subpoena, gives testimony under oath or produces evidence, documentary or otherwise, under oath.’ ” 40 Cong. Rec. 7657-7658.[16]
This Court in United States v. Monia, 317 U. S. 424, 429-430, recognized that “the sole purpose” of the 1906 statute was to limit immunity to persons “who, in obedience to a subpoena, testified or produced evidence under oath,” so that the decision whether or not to grant immunity would be that of the appropriate “Government officials,” rather than of private citizens anticipating indictment.[17]
*239 We conclude, therefore, that the 1906 statute did not, either expressly or implicitly, extend the immunity provision of the Act of February 25, 1903, to include nonjudicial proceedings. The 1906 Act simply limited immunity to persons testifying under oath and in response to subpoena.
Our decision today is based solely on the language and legislative history of the relevant congressional enactments. Congress has extended immunity, with careful safeguards, to persons testifying before congressional committees in certain limited situations not here involved.[18] Where Congress, however, has limited immunity to persons testifying in judicial proceedings, as it has plainly done here, it is not for the courts to extend the scope of the immunity.
The District Court erred, therefore, in holding that appellee’s testimony before a congressional subcommittee had immunized him from prosecution. The judgment dismissing the indictment is reversed and the case remanded for proceedings in conformity with this opinion.

It is so ordered.

 The relevant portion of this Act is set forth on pp. 96-97.

 The Government concedes that the testimony given before the subcommittee related to matters charged in the indictment.

 Congressional hearings are generally conducted under the Legislative Reorganization Act of 1946, 60 Stat. 812, under the rules or regulations of either House, or, as in the present case, under a special resolution. H. Res. 51, 86th Cong., 1st Sess., 105 Cong. Rec. 1785.

 This Act, as codified, appears at 15 U. S. C. § 32. The codification, which has not been enacted into positive law, eliminates the appropriation provision of the Act which by its terms was of no effect after June 30, 1904. The codification makes no other change. 61 Stat. 638, 1 U. S. C. §204 (a), declares that the United States Code establishes “prima facie the laws of the United States, general and permanent in their nature . . . Provided, however, That whenever titles of such Code shall have been enacted into positive law the text thereof shall be legal evidence of the laws therein contained, in all the courts . . . .” This Court, in construing that statute has said that “the very meaning of ‘prima facie’ is that the Code cannot prevail over the Statutes at Large when the two are inconsistent.” Stephan v. United States, 319 U. S. 423, 426. Even where Congress *231 bas enacted a codification into positive law, this Court has said that the
“change of arrangement, which placed portions of what was originally a single section in two separated sections cannot be regarded as altering the scope and purpose of the enactment. For it will not be inferred that Congress, in revising and consolidating the laws, intended to change their effect unless such intention is clearly expressed.” Fourco Glass Co. v. Transmirra Corp., 353 U. S. 222, 227, quoting Anderson v. Pacific Coast S. S. Co., 225 U. S. 187, 198-199. Certainly where, as here, the “change of arrangement” was made by a codifier without the approval of Congress, it should be given no weight. “If construction [of a section of the United States Code which has not been enacted into positive law] is necessary, recourse must be had to the original statutes themselves.” Murrell v. Western Union Tel. Co., 160 F. 2d 787, 788. Accordingly, in order to construe the immunity provision of the Appropriations Act of February 25, 1903, we must read it in the context of the entire Act, rather than in the context of the “arrangement” selected by the codifier.

 See dissenting opinion of Mr. Justice Black, post, at 113, note 11.

 The text of the 1906 statute is set forth infra, note 9.

 This conclusion was reached after the taking of testimony. Accordingly, the Government could not appeal the trial court’s directed verdict of acquittal.

 The Armour case arose before the creation of independent Departments of Labor and of Commerce.

 The full text of the 1906 Act is as follows.
“Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That under the immunity provisions in the Act entitled ‘An Act in relation to testimony before the Interstate Commerce Commission,’ and so forth, approved February eleventh, eighteen hundred and ninety-three, in section six of the Act entitled ‘An Act to establish the Department of Commerce and Labor,’ approved February fourteenth, nineteen hundred and three, and in the Act entitled ‘An Act to further regulate commerce with foreign nations and among the States,’ approved February nineteenth, nineteen hundred and three, and in the Act entitled ‘An Act making appropriations for the legislative, executive, and judicial expenses of the Government for the fiscal year ending June thirtieth, nineteen hundred and four, and for other purposes,’ approved February twenty-fifth, nineteen hundred and three, immunity shall extend only to a natural person who, in obedience to a subpoena, gives testimony under oath or produces evidence, documentary or otherwise, under oath.” 34 Stat. 798, 15 U. S. C. § 33.

 See discussion of these events in United States v. Monia, 317 U. S. 424, 428-429.

 “An Act To establish the Department of Commerce and Labor” provided in relevant part:
“In order to accomplish the purposes declared in the foregoing part of this section, the said Commissioner shall have and exercise the same power and authority in respect to corporations, joint stock companies and combinations subject to the provisions hereof, as is conferred on the Interstate Commerce Commission in said 'Act to regulate commerce’ and the amendments thereto in respect to common carriers so far as the same may be applicable, including the right to subpoena and compel the attendance and testimony of witnesses and the production of documentary evidence and to administer oaths. All the requirements, obligations, liabilities, and immunities imposed or conferred by said ‘Act to regulate commerce’ and by ‘An Act in relation to testimony before the Interstate Commerce Commission,’ and so forth, approved February eleventh, eighteen hundred and ninety-three, supplemental to said ‘Act to regulate commerce,’ shall also apply to all persons who may be subpoenaed to testify as witnesses or to produce documentary evidence in pursuance of the authority conferred by this section.” 32 Stat. 825, 828.
The Act of February 11, 1893, provides in relevant part:
“That no person shall be excused from attending and testifying or from producing books, papers, tariffs, contracts, agreements and documents before the Interstate Commerce Commission, or in obedience to the subpoena of the Commission, whether such subpoena be signed or issued by one or more Commissioners, or in any cause or proceeding, criminal or otherwise, based upon or growing out of any alleged violation of the act of Congress, entitled, ‘An act to regulate commerce,’ approved February fourth, eighteen hundred and eighty- *234 seven, or of any amendment thereof on the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him, may tend to criminate him or subject him to a penalty or forfeiture. But no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing, concerning which he may testify, or produce evidence, documentary or otherwise, before said Commission, or in obedience to its subpoena, or the subpoena of either of them, or in any such case or proceeding: Provided, That no person so testifying shall be exempt from prosecution and punishment for perjury committed in so testifying.” 27 Stat. 443-444.

 Although Congressman Littlefield referred to this dictum in the debate on the House version of the bill, 40 Cong. Rec. 8738, he did not intimate that the 1903 Act was applicable to congressional investigations or that the purpose of the 1906 Act was to make it so applicable. On the contrary, Congressman Littlefield stated that the sole purpose of the Act was to limit immunity to subpoenaed and sworn testimony. He specifically said, moreover, that the 1906 Act and the Acts which it amended were intended to apply only to a “criminal prosecution . . , [and to investigations conducted by] the Interstate Commerce Commission ... or by the Commissioner of Corporations . . . ,” and that the 1906 Act was intended to assure that no “person shall have the power to offer immunity to a witness except the Government of the United States or some officer acting in behalf thereof.” Id., at 8739. This lan *235 guage, in its context, would not seem to include members or Committees of Congress. See also H. R. Rep. No. 3797, 59th Cong., 1st Sess. Furthermore, even if we were to assume arguendo that the Armour decision was based on a construction of the Act of February 25, 1903, we would be hesitant to accept appellee’s argument that the failure of Congress to overrule that construction resulted in an amendment by implication. Amendments by implication, like repeals by implication, are not favored. See 1 Sutherland, Statutory Construction (3d ed.) 365-366 (citing cases). As this Court said in Jones v. Liberty Glass Co., 332 U. S. 524, 534: “We do not expect Congress to make an affirmative move every time a lower court indulges in an erroneous interpretation. In short, the original legislative language speaks louder than such judicial action.”

 See United States v. Monia, supra, at 429.

 The Senate version of the bill prevailed in conference and was adopted. See H. R. Rep. No. 5049, 59th Cong., 1st Sess.

 Senator Daniel’s supposition that the 1906 Act “applies” to congressional committees was probably based on the erroneous assumption that the 1906 Act, in addition to amending the Acts to which it made specific reference, see note 9, supra, also amended 12 Stat. 333 which provided that: “the testimony of a witness examined and testifying before either House of Congress, or any committee of either House of Congress, shall not be used as evidence in any criminal proceeding against such witness in any court of justice . . . .” This statute was superseded in 1954 by 68 Stat. 745, 18 U. S. C. § 3486.

 Although the 1906 amendment referred to the Act of February 25, 1903, along with other immunity statutes, in limiting immunity to persons testifying under oath and in response to subpoena, Senator Knox was correct in suggesting that the Amendment would have little, if any, application to judicial testimony which is commonly sworn and subpoenaed.

 In Monia, which involved a grand jury investigation, the appropriate “Government officials” were the Attorney General and his subordinates. In Armour the appropriate government official was the Commissioner of Corporations. Congress may of course designate its own members as appropriate officials, as it has in fact done in certain limited situations not here involved, see note 18, infra.
It is true that the Monia opinion, with regard to the issue raised in that case, considered the 1903 Act as having the same effect as *239 the Interstate Commerce Act. The issue in that case was whether a witness was required to claim his privilege against self-inerimination as a condition of obtaining immunity. It is undisputed that the 1906 Act standardized the rules relating to the types of testimony which would be privileged under the Interstate Commerce Act, the Commerce and Labor Act, and the Act of February 25, 1903. The 1906 Act did not, however, standardize (or alter) the types of proceedings in which immunity could be obtained.

 See Immunity Act of 1954, 68 Stat. 745, 18 U. S. C. § 3486.