**John W. ROSE, Plaintiff-Appellee,**

v.

**The NATIONAL CASH REGISTER CORPORATION, Defendant-Appellant.**

No. 81–1245.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 2, 1982.

Decided March 31, 1983.

Rehearing Denied June 3, 1983.

Bruce Goodman, Schmidt, Howlett, Van't Hof, Snell & Vana, Richard A. Kay (argued), Grand Rapids, Mich., for defendant-appellant.

Gary J. McInerney (argued), Murphy, Burns & McInerney, Randall L. Velzen, Grand Rapids, Mich., for plaintiff-appellee.

Before MARTIN and KRUPANSKY, Circuit Judges and BROWN, Senior Circuit Judge.

KRUPANSKY, Circuit Judge.

The defendant-appellant, National Cash Register Corporation (NCR), appeals from a judgment, entered on a jury verdict in the Western District of Michigan, finding NCR liable to plaintiff-appellee, John W. Rose (Rose), for terminating his employment in violation of the Age Discrimination in Employment Act (ADEA or Act), 29 U.S.C. § 621 et seq.

A review of the record below reveals the following uncontroverted facts. Rose's employment as a salesman in NCR's Grand Rapids, Michigan office was terminated in June of 1976. Rose was 54 years of age at the time of his termination and had been employed by NCR for approximately 25 years. Rose's position was filled by a man under 30 years of age.

Rose initiated this action in the district court on January 17, 1977, asserting that he had been terminated solely on account of his age. In his case in chief, Rose relied primarily on his own testimony and that of two former NCR employees, Donald Stites and James Heubner.

This testimony disclosed that in the early 1970's NCR commenced reorganization of its sales force including a reduction in the number of sales persons. NCR instituted this reduction through a program entitled Reduction In Force (RIF). Rose's termination was recorded as a RIF.

Rose, Stites and Heubner also testified that NCR, in connection with its corporate reorganization, sought to establish a new "younger image" for the company. To achieve this new image, according to the testimony, NCR began to hire only young employees. Rose also testified that the vice-president of NCR's midwest region informed him: "Men your age, there isn't going to be any future in the new NCR."

NCR acknowledged the existence of the RIF program but denied that the program was designed to terminate older employees. Moreover, NCR maintained that Rose was terminated due to continued, substandard sales performance and that his termination was recorded as a RIF only because of his supervisor's desire to afford him the benefits available under that program. NCR introduced evidence demonstrating that Rose had continuously, through the years 1969–1975, failed to meet his sales quotas.

Rose and Heubner testified, however, that revenue quotas—the amount of money

received by NCR from new and old sales—had been stressed as the company's most important measure of performance. Rose had been successful in achieving his revenue quotas.

Following several days of deliberations, the jury returned a verdict in favor of Rose. The jury awarded Rose $25,200.00 in lost wages and $20,650.00 in fringe benefits. The jury also concluded that NCR's violation of the ADEA was willful.

Thereafter, the trial court entered judgment for $45,850.00 pursuant to the jury verdict plus an equal amount in liquidated damages and awarded pre-judgment interest on the entire sum. The district court denied a subsequent defense motion for judgment notwithstanding the verdict or new trial. NCR has appealed raising several issues including two issues of first impression in this Circuit.

NCR's primary argument on appeal, however, is that Rose failed to establish a *prima facie* case of age discrimination, and this Circuit has considered that issue on several occasions. *See, Blackwell v. Sun Electric Corp.,* 696 F.2d 1176 (6th Cir.1983); *Ackerman v. Diamond Shamrock,* 670 F.2d 66 (6th Cir.1982); *Sahadi v. Reynolds Chemical,* 636 F.2d 1116 (6th Cir.1980); *Laugesen v. Anaconda Company,* 510 F.2d 307 (6th Cir.1975). Cf. *Locke v. Commercial Union Insurance Co.,* 676 F.2d 205 (6th Cir.1982). In each of the foregoing cases this Court has declined to adopt rigid guidelines exclusively establishing a method for proving a *prima facie* case in age discrimination actions.

This is not to say that this Court has failed to identify the crucial elements of an ADEA action. On the contrary, while employing slightly different formulations, this Circuit has consistently held that the ultimate burden borne by a plaintiff in an age discrimination action is that of proving "he was discharged because of his age." *Laugesen, supra* at 313. *See Blackwell, supra* at 1180 (age must be a determining factor); *id.* at 1188 (Krupansky, J., dissenting) (but

for age);[1] *Ackerman, supra,* at 70 (age makes a difference); *Sahadi, supra* at 1117 (age a contributing factor).

There is, of course, a difference between evidence which merely establishes a *prima facie* case and that which compels a verdict for the plaintiff. *Laugeson, supra* at 312. To say that a plaintiff has established a *prima facie* case is simply to say that he has produced sufficient evidence to present his case to the jury, i.e. he has avoided a directed verdict. *See e.g. White v. Abrams,* 495 F.2d 724, 729 (4th Cir.1974).

Evidence is sufficient to preclude granting a motion for directed verdict when, in reviewing the evidence in the light most favorable to the non-moving party, it would permit a reasonable jury to find in favor of that party. *Coffy v. Multi County Narcotics Bureau,* 600 F.2d 570, 579 (6th Cir.1979).

■ Hence, a plaintiff in an ADEA action establishes a *prima facie* case by presenting evidence which, when viewed in the light most favorable to the plaintiff, would permit a reasonable jury to find that he was discharged because of his age. Contrawise, if, from "the facts presented in plaintiff's proofs there [is] simply no reasonable inference to suggest that plaintiff was discriminated against because of his age," *Sahadi, supra* at 1117, then plaintiff has failed to present a *prima facie* case and the trial court is required to direct a verdict for defendant.

■ Applying these principles to the instant matter, the Court is constrained to conclude that Rose established a *prima facie* case. Rose and two former NCR employees testified that the company wanted to promote a new, "younger image" while simultaneously reducing its work force. Moreover, Rose testified that a superior at NCR informed him that NCR held no future for a man of Rose's age. Viewed in the light most favorable to Rose, this evidence permitted the jury to conclude that Rose was a victim of the new, "younger image" at NCR.

**1.** The majority and dissent in *Blackwell,* while using different terms, were in agreement as to the ultimate burden. The majority and dissent diverged in assessment of the adequacy of the instructions conveying that burden to the jury.

■ NCR, as indicated, maintained that Rose was terminated solely because of his repeated failure to accomplish his sales objectives. The jury, however, was entitled to credit the testimony of Rose and Heubner to the effect that revenue quotas were the company's true measure of competence and thus that NCR's reliance on unachieved sales quotas as a justification for firing Rose was a pretext. This Court is not free to substitute its judgment for that of the trier of fact.

NCR next asserts that the trial court erred in awarding liquidated damages without considering, independent of the jury verdict, the purported good faith of the defendant. The ADEA recites, in pertinent part:

> Amounts owing to a person as a result of a violation of this Act shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 16 and 17 of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. 216, 217): *Provided.* That liquidated damages shall be payable only in cases of willful violations of this Act.

81 Stat. 604. Section 216(b) of Title 29 directs that employers who violate the Fair Labor Standards Act (FLSA) shall be liable to the aggrieved employees for "the amount of their unpaid minimum wages or their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages."

■ In the Portal-to-Portal Pay Act of 1947, Congress, dissatisfied with the automatic award of liquidated damages in suits under the FLSA, limited such awards as follows:

> In any action commenced prior to or on or after May 14, 1947 to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

29 U.S.C. § 260. In essence, NCR argues that Congress intended this section to apply in ADEA actions. This Circuit has not heretofore addressed the issue.

A review of the case authority from other Circuits reveals that only the Fifth Circuit has accepted NCR's position, *Hedrick v. Hercules, Inc.,* 658 F.2d 1088 (5th Cir.1981); *Hays v. Republic Steel Corp.,* 531 F.2d 1307 (5th Cir.1976), while the prevailing weight of authority is to the contrary. *Goodman v. Heublein Inc.,* 645 F.2d 127 (2d Cir.1981); *Kelly v. American Standard, Inc.,* 640 F.2d 974 (9th Cir.1981); *Wehr v. Burroughs Corp.,* 619 F.2d 276 (3d Cir.1980); *Loeb v. Textron, Inc.,* 600 F.2d 1003 (1st Cir.1979). *See also, Syvock v. Milwaukee Boiler Mfg. Co., Inc.,* 665 F.2d 149, 154 and n. 4 (7th Cir.1981); *But See Mistretta v. Sandia Corp.,* 639 F.2d 588, 595 and n. 4 (10th Cir.1980) (While stating that an employer's good faith renders the award of liquidated damages discretionary, the Tenth Circuit declined to decide whether § 260 had been incorporated into the ADEA). Moreover, this Court finds that the discussion of the Act by the Supreme Court in *Lorillard v. Pons,* 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978), relied upon by the majority of Circuits, precludes acceptance of NCR's position.

In *Lorillard v. Pons,* the Supreme Court held that a jury trial is available in private actions seeking compensatory damages under the ADEA.[2] In discussing the relation-

---

**2.** Several months after the decision in *Lorillard v. Pons,* the 1978 amendments of the Act took effect. Pub.L. 95–256. The amendments, *inter alia,* specifically provide for jury trials in private civil actions under the ADEA. 29 U.S.C. § 626(c)(2). In enacting this amendment, Congress not only expressed satisfaction with the Supreme Court's result in *Lorillard,* which ruled on the right to jury trial only as to compensatory damages, but also wanted to insure

ship between the ADEA and FLSA, the Supreme Court stated:

> [I]n enacting the ADEA, Congress exhibited both a detailed knowledge of the FLSA provisions and their judicial interpretation and a willingness to depart from those provisions regarded as undersirable or inappropriate for incorporation. For example, in construing the enforcement sections of the FLSA, the courts had consistently declared that injunctive relief was not available in suits by private individuals but only in suits by the Secretary.... Congress made plain its decision to follow a different course in the ADEA by expressly permitting "such ... equitable relief as may be appropriate to effectuate the purposes of [the ADEA] including without limitation judgments compelling employment, reinstatement or promotion" "in *any* action brought to enforce" the Act. § 7(b), 29 U.S.C. § 626(b) (emphasis added). Similarly, while incorporating into the ADEA the FLSA provisions authorizing awards of liquidated damages, Congress altered the circumstances under which such awards would be available in ADEA actions by mandating that such damages be awarded only where the violation of the ADEA is willful.

*Id.* at 582, 98 S.Ct. at 871 (citations omitted). The footnote accompanying the preceding quotation is particularly instructive:

> By its terms, 29 U.S.C. § 216(b) requires that liquidated damages be awarded as a matter of right for violations of the FLSA. However, in response to its dis-

satisfaction with that judicial interpretation of the provision, Congress enacted the Portal-to-Portal Pay Act of 1947, 61 Stat. 84, which *inter alia,* grants courts authority to deny or limit liquidated damages where the "employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of" the FLSA § 11, 29 U.S.C. § 260 (1970 ed., Supp. V). *Although § 7(e) of the ADEA, 29 U.S.C. § 626(e), expressly incorporates §§ 6 and 10 of the Portal-to Portal Pay Act, 29 U.S.C. §§ 255 and 259 (1970 ed. and Supp. V), the ADEA does not make any reference to §§ 11, 29 U.S.C. § 260 (1970 ed., Supp. V).*

*Id.* at n. 8, 98 S.Ct. at 870 n. 8 (emphasis added)

The Supreme Court's discussion clearly demonstrates how Congress selectively and *expressly* incorporated provisions of the FLSA and the Portal-to-Portal Pay Act into the ADEA as it deemed fit for that purpose. There is simply no basis for this Court to disturb this legislative scheme by arbitrarily inserting into the ADEA a provision which Congress did not mention.

NCR would emphasize that the ADEA incorporates, for purposes of assessing damages, "sections 16 and 17 of the Fair Labor Standards Act, of 1938, *as amended.*" 81 Stat. 604 (emphasis added).[3] NCR asserts that the words "as amended" were utilized by Congress to refer to § 260. A common sense construction of the section, however,

---

that parties to such actions were afforded a jury determination as to the pertinent findings—willfulness—with respect to claims for liquidated damages. H.Conf.Rep. No. 950, 95th Cong., 2d Sess. 13–14, *reprinted in* [1978] U.S. Code Cong. & Ad.News 504, 528, 535. *See Goodman v. Heublein, supra* at 129–130 n. 2.

**3.** The codification of this provision, which has not been enacted into positive law, reads as follows:

> Amounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 216 and 217 of this title.

29 U.S.C. § 626(b). The codification has deleted the words "as amended" upon which NCR relies. A codification which has not been enacted into positive law is merely "prima facie the law[ ] of the United States" and the Statutes at Large prevail in the case of inconsistency. 1 U.S.C. § 204(a); *United States v. Welden,* 377 U.S. 95, 84 S.Ct. 1082, 12 L.Ed.2d 152 (1964).

The Court has therefore referred to the provision of the Act as it appears in the Statutes at Large. However, for the reasons stated in the text, the inconsistency is of no assistance to NCR's position.

indicates that the words "as amended" merely refer to internal amendments of §§ 16 and 17, of which there have been several, *see e.g.* Pub.L. 87–30, Act Oct. 26, 1949, Act May 14, 1947, rather than separate provisions of Title 29 which simply have an effect on the operation of §§ 16 and 17.

█ This Court is thus persuaded that the prevailing weight of authority is correct and we join those Circuits in holding that 29 U.S.C. § 260 is not applicable to actions instituted pursuant to the ADEA. Accordingly, where, as here, the jury determines that an employer's violation of the ADEA was willful, the trial judge is not obligated, as a prerequisite to an award of liquidated damages, to consider the employer's protestations of good faith.

█ NCR also challenges the propriety of the district court's award of pre-judgment interest in addition to liquidated damages. This issue has also not been resolved in this Circuit.

NCR properly observes that the Supreme Court held in *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945), that an employee is not entitled to both full liquidated damages and pre-judgment interest under § 16 of the FLSA. Inasmuch as Congress incorporated the remedies of the FLSA into the ADEA and, since "Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law" *Lorillard v. Pons, supra,* 434 U.S. at 582, 98 S.Ct. at 871, this Court is of the opinion that the rule of *Brooklyn Savings Bank,* is applicable to ADEA actions. *See Spagnuolo v. Whirlpool Corp.,* 641 F.2d 1109 (4th Cir.), *cert. denied,* 454 U.S. 860, 102 S.Ct. 316, 70 L.Ed.2d 158 (1981). This action must therefore be remanded to the district court for vacation of the award of pre-judgment interest.

Finally, the award of attorney's fees, which was determined by simply granting an amount equal to one-third of the damages awarded, was also improper and must be remanded for computation in accordance with the principles enunciated in *Northcross*

*v. Board of Education of Memphis City Schools,* 611 F.2d 624 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980), and its progeny.

In accordance with the foregoing, the instant matter is affirmed in part, reversed in part and remanded to the district court for action consistent with this decision.