PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

WASHINGTON-DULLES
TRANSPORTATION, LIMITED,
         *Plaintiff-Appellant,*

    v.

METROPOLITAN WASHINGTON AIRPORTS
AUTHORITY,
         *Defendant-Appellee,*

DULLES TAXI SYSTEMS,
INCORPORATED,
    *Intervenor/Defendant-Appellee.*

No. 00-2153

WASHINGTON-DULLES
TRANSPORTATION, LIMITED,
         *Plaintiff-Appellant,*

    v.

METROPOLITAN WASHINGTON AIRPORTS
AUTHORITY,
         *Defendant-Appellee,*

DULLES TAXI SYSTEMS,
INCORPORATED,
    *Intervenor/Defendant-Appellee.*

No. 01-1095

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-00-999-A)

Argued: June 5, 2001

Decided: August 29, 2001

Before MOTZ, TRAXLER, and KING, Circuit Judges.

---

Reversed and remanded by published opinion. Judge Traxler wrote the opinion, in which Judge Motz and Judge King joined.

---

## COUNSEL

**ARGUED:** Hopewell H. Darneille, III, VERNER, LIIPFERT, BERNHARD, MCPHERSON & HAND, CHARTERED, Washington, D.C., for Appellant. Raymond F. Monroe, CROWELL & MORING, L.L.P., Washington, D.C., for Appellees. **ON BRIEF:** Monica G. Parham, CROWELL & MORING, L.L.P., Washington, D.C.; Janis Orfe, THE LAW OFFICES OF JANIS ORFE, P.C., Fairfax, Virginia; John S. Pachter, Jonathan D. Shaffer, SMITH, PACHTER, MCWHORTER & D'AMBROSIO, P.L.C., Vienna, Virginia, for Appellees.

---

## OPINION

TRAXLER, Circuit Judge:

The Metropolitan Washington Airports Authority (MWAA) is a regional entity created by the Virginia General Assembly and the District of Columbia City Council for the purpose of operating the federally owned Washington-Dulles International Airport and Ronald Reagan Washington National Airport. The Metropolitan Washington Airports Act of 1986, *see* Pub. L. 99-591, §§ 6001-6012, 100 Stat. 3341-376 (1986) (codified as amended at 49 U.S.C.A. § 49101 - 49112 (West Supp. 2000)) ("the Enabling Act"), authorized the transfer of the control and operation of these airports to MWAA via a 50-year lease (the "Lease") between the Secretary of Transportation and MWAA, *see* 49 U.S.C.A. §§ 49102(a), 49104.

In August 1999, MWAA issued a Request for Proposals for the Dulles taxicab concession contract. Appellant Washington-Dulles

Transportation, Ltd. (WDT), the incumbent taxi concessionaire, submitted a proposal but was not awarded the contract. MWAA's business administration committee instead selected Dulles Taxi Systems, Inc. to receive the taxi concession. WDT filed an action in federal court first seeking a declaration that MWAA's decision violated the Enabling Act and the Lease, and also seeking an injunction barring MWAA from awarding the taxi concession to Dulles Taxi and directing MWAA to give the concession to WDT. The district court subsequently dismissed WDT's complaint for want of subject matter jurisdiction. On appeal, we are asked to decide whether the district court had jurisdiction over this matter and, if so, whether WDT has standing to bring this action in the first place. We answer both questions in the affirmative. Accordingly, we reverse and remand for further proceedings.

I.

A.

Before Congress enacted legislation authorizing the Secretary of Transportation to transfer control of Dulles and Reagan National airports, the Commonwealth of Virginia and the District of Columbia, acting pursuant to an interstate compact, jointly created MWAA for the sole purpose of leasing Dulles and Reagan National airports from the federal government. *See* 1985 Va. Acts ch. 598, *repealed by* 2001 Va. Acts ch. 342 § 1 (to be codified at Va. Code Ann. § 5.1-153); D.C. Code Ann. § 7-1252. Virginia and the District of Columbia enacted similar statutes that conferred on MWAA various powers and assigned it various duties. *See* 2001 Va. Acts ch. 342 § 1 (to be codified at Va. Code Ann. § 5.1-156); D.C. Code Ann. § 7-1255. Under both statutory schemes, the courts of the Commonwealth of Virginia are vested with original jurisdiction "of all actions brought by or against [MWAA], which courts shall in all cases apply the law of the Commonwealth of Virginia." 2001 Va. Acts ch. 342 § 1 (to be codified at Va. Code Ann. § 5.1-173(A)); *see* D.C. Code Ann. § 7-1272(a). Virginia courts are given jurisdiction over lawsuits against MWAA for breach of contract, *see* 2001 Va. Acts ch. 342 § 1 (to be codified at Va. Code Ann. § 5.1-173(B)); D.C. Code Ann. § 7-1272(b); however, neither the Virginia Code nor the D.C. Code spe-

4 WASHINGTON-DULLES TRANSP. v. MWAA

cifically purports to give Virginia courts jurisdiction over actions against MWAA to force it to adhere to the terms of the Lease.

Thus, when Congress passed the Enabling Act, it did so with the knowledge that the state statutes creating MWAA broadly conferred jurisdiction to Virginia courts over legal actions involving MWAA. Recognizing a "continuing but limited" federal interest, 49 U.S.C.A. § 49101(3), in the operation of the two airports that "can be provided through a lease mechanism which provides for local control and operation," 49 U.S.C.A. § 49101(10), Congress dictated various requirements that the Lease must satisfy. Moreover, Congress granted the federal courts jurisdiction to enforce the provisions of the Lease: "The district courts of the United States have jurisdiction to compel the Airports Authority and its officers and employees to comply with the terms of the lease." 49 U.S.C.A. § 49104(c). The parties, however, dispute whether this action technically qualifies as one to compel MWAA to comply with the Lease under § 49104(c).

The Enabling Act prescribes a number of mandatory provisions that must be included in the Lease. *See* U.S.C.A. § 49104(a). The Lease, in turn, specifically incorporates these mandatory terms. The Enabling Act requires the Lease to provide that "[i]n acquiring by contract supplies or services for an amount estimated to be more than $200,000, or awarding concession contracts, the Airports Authority to the maximum extent practicable *shall obtain complete and open competition through the use of published competitive procedures*." 49 U.S.C.A. § 49104(a)(4) (emphasis added). Section 11.D. of the Lease more or less incorporates this provision, except that the Lease employs the phrase "full and open competition." J.A. 55. Congress determined that the Lease must also include a provision directing MWAA to "develop a code of ethics and financial disclosure to ensure the integrity of all decisions made by its board of directors and employees." 49 U.S.C.A. § 49104(a)(8). This provision is contained in section 14.C of the Lease.

The Lease also incorporates a number of the Enabling Act's other provisions even though these provisions are not statutorily required to be made part of the Lease. For example, the Enabling Act subjects MWAA's contracts to review to ensure the contracts "were awarded by procedures that follow sound Government contracting principles,"

*see* 49 U.S.C.A. § 49106(g), and the Lease provides for such a review as well. The Lease incorporates the Enabling Act's prohibition against board members and their immediate families working for or holding a "substantial financial interest" in any entity "that has or is seeking a contract or agreement with [the Authority]." 49 U.S.C.A. § 49106(d). The code of ethics that MWAA is directed to develop must include standards for determining what constitutes a "substantial financial interest" under § 49106(d). *See* 49 U.S.C.A. § 49104(a)(8). In addition to incorporating specific statutory requirements, the Lease also includes a catch-all requirement that MWAA "comply with the conditions imposed by the [Enabling] Act." J.A. 65.

MWAA adopted a "Contracting Policies and Procedures Manual" (the "contracting manual") expressly for the purpose of fulfilling "the legislative and lease requirements for published competitive procedures." J.A. 76. The contracting manual provides that when a Request for Proposals is issued, as in this case, the proposals "are evaluated and scored against predetermined evaluation criteria" and MWAA "select[s] the proposal which offers the greatest overall benefit to the [MWAA] in terms of the evaluation criteria listed in the Request for Proposals." J.A. 83. WDT argues that its action for declaratory and injunctive relief is an attempt to compel MWAA to comply with these provisions of the Lease.

## B.

WDT's complaint alleges that MWAA issued a formal Request for Proposals that disclosed the criteria MWAA would use in selecting the best proposal. An evaluation team reviewed the proposals and determined that WDT's proposal scored higher under these criteria than any other proposal and recommended that the concession be awarded to WDT. WDT's proposal, according to the complaint, was also the most "financially advantageous" proposal submitted to MWAA. Nevertheless, MWAA's business administration committee voted to reject the evaluation team's recommendation and to award the taxi concession to Dulles Taxi. Subsequently, one of the members of the business administration committee revealed that his law firm represented an entity that was partially owned by Dulles Taxi's principals and recused himself from further involvement in MWAA's request for proposals for the taxi concession. WDT formally protested

MWAA's selection of Dulles Taxi. MWAA permitted WDT and Dulles Taxi to present additional information to the business administration committee, but the committee was not persuaded to change its recommendation that Dulles Taxi be awarded the taxi concession. Subsequently, MWAA's board of directors denied WDT's protest.

In its complaint, WDT contends that MWAA deviated from its published competitive procedures in refusing to award the taxi concession to WDT, which scored the highest on the selection criteria and received the recommendation of the evaluation team, and failed, therefore, to obtain "full and open competition," 49 U.S.C.A. § 49104(a)(4), or comply with "sound Government contracting principles," 49 U.S.C.A. § 49104(g), in violation of the Enabling Act and the Lease. Additionally, WDT contends that the competitive nature of the procurement process was tainted by the business administration committee member's conflict of interest.

The district court ruled that it lacked jurisdiction. The court reasoned that federal courts have jurisdiction to decide whether MWAA has *adopted* competitive bid procedures that satisfy the mandate of the Enabling Act and that a federal court may entertain a facial challenge to the sufficiency of the "published competitive procedures" used by MWAA. However, the district court concluded that when the application of the published competitive procedures was at issue, there was no federal jurisdiction.[1]

---

[1]Shortly after the district court entered its order of dismissal, WDT filed a similar action in Virginia state court. MWAA sought to dismiss that action as well, on the grounds that there is no cause of action under Virginia law permitting a disappointed bidder to challenge the decision of MWAA. The Virginia Circuit Court dismissed WDT's complaint, and the Supreme Court of Virginia denied review of that decision. WDT returned to district court and moved the court to vacate its order of dismissal under Rule 60(b)(1) of the Federal Rules of Civil Procedure because the district court's order, according to WDT, was based on the erroneous assumption that relief was available in the courts of Virginia. WDT also sought to have the order vacated under Rule 60(b)(3) because MWAA had taken inconsistent legal positions by arguing in federal court that Virginia courts would have jurisdiction but then moving to dismiss WDT's state action for lack of jurisdiction. The district court denied the motion. WDT appeals that decision as well as the original order of dismissal. We consolidated the separate appeals for purposes of review. In light of our disposition of the original order of dismissal, we need not address the district court's ruling on WDT's Rule 60(b) motion.

## II.

We first consider whether the district court had jurisdiction under § 49104(c). It is not clear to us why, under the language of the Enabling Act and the Lease, federal jurisdiction would be limited to ensuring only that MWAA has *adopted* competitive bid procedures that satisfy the requirements of the Enabling Act. Federal district courts "have jurisdiction to compel [MWAA] and its officers and employees *to comply with the terms of the lease*." 49 U.S.C.A. § 49104(c) (emphasis added). Nothing in this broad language suggests that federal jurisdiction over an action to enforce the terms of the Lease is circumscribed by anything other than the Lease itself. The Enabling Act is straightforward on this point — the district court has jurisdiction to entertain an action brought by a proper party to require MWAA to comply with any term contained in the Lease.

Thus, the question becomes whether WDT's complaint fairly alleges that MWAA failed to adhere to the terms of the Lease. We think the complaint clearly alleges that MWAA has failed to comply with the terms of the Lease. WDT contends that MWAA failed to "obtain complete and open competition through the use of published competitive procedures," 49 U.S.C.A. § 49104(a)(4), a mandatory term that is specifically incorporated into the Lease. According to WDT, MWAA ignored its published selection criteria in awarding the taxi concession and therefore failed to use its published competitive procedures. The Enabling Act and the Lease require MWAA to *use* published competitive procedures, not merely put them on paper. Federal jurisdiction over the enforcement of the Lease is consistent with the continuing federal interest in the airport. The federal government, as the lessor, has an obvious interest in the enforcement of the terms of a lease to which it is a party. Moreover, federal jurisdiction to enforce lease provisions involving procurement procedures is consistent with the structure of the relevant state statutes and the interplay between those statutes and the Enabling Act. Virginia law expressly exempts MWAA from the Virginia Public Procurement Act, *see* 2001 Va. Acts ch. 342 § 1 (to be codified at Va. Stat. § 5.1-174), and the District of Columbia's statute likewise exempts MWAA from its procurement law, *see* D.C. Code Ann. § 7-1273. Unlike the Enabling Act, neither state statute addresses procurement procedures. And, although the state statutes provide a state court forum for general con-

tract claims against MWAA, *see* 2001 Va. Acts ch. 342 § 1 (to be codified at Va. Code Ann. § 5.1-173(A), (B)); *see* D.C. Code Ann. § 7-1272(a), (b), these statutes do not specifically address actions to compel MWAA to adhere to its duties under the Lease. The Enabling Act, which was enacted after the state legislation, fills this gap, specifically providing for the enforcement of the terms of the Lease, including the provisions addressing the procurement of concession contracts, in federal court. Indeed, if the provision requiring full and open competition in competitive bidding is not enforceable in federal court, then this requirement in the Lease mandated by an Act of Congress would be a hollow and toothless promise.

Relying on *Metropolitan Washington Airports Auth. Prof'l Firefighters Local 3217 v. Metropolitan Washington Airports Auth.*, 159 F.3d 630 (D.C. Cir. 1998), MWAA argues that the jurisdiction of the district court does not extend to determining whether MWAA properly applied its published competitive procedures for awarding concession contracts. *Firefighters Local* considered the question of whether federal courts have jurisdiction to adjudicate an unfair labor practices claim brought by MWAA employees. *See id.* at 631. The Enabling Act requires the MWAA to continue the collective bargaining rights enjoyed by MWAA employees before the Lease became effective. *See id.* (citing 49 U.S.C.A. § 49104(a)(6)(D)). In view of this mandatory term, Article 14.B of the Lease requires MWAA to "'adopt and maintain an employment code.'" *Id.* MWAA therefore adopted, and Virginia ratified, a labor code that required unfair labor practices claims to be submitted to an Unfair Labor Practices Panel. Under the labor code, Virginia Circuit Court is vested with jurisdiction to consider challenges to the panel's decision. *See id.* In *Firefighters Local*, the firemen's union filed an action in district court to enforce a decision of the panel that MWAA had violated the labor code by refusing to bargain in good faith. The District of Columbia Circuit held that the district court had no jurisdiction because the union's position was not that MWAA had violated the terms of the Lease, but that MWAA had violated the labor code. *See id.* at 633. The court distinguished the union's claim from one that "the Code on its face violated the lease in some manner," in which case "the federal district court would have had jurisdiction." *Id.* MWAA takes this to mean that when MWAA adopts policies or procedures pursuant to a directive from the Lease, federal district courts have jurisdiction only

to the extent that an adopted policy or procedure, on its face, violates the Lease. Thus, according to MWAA, any matter involving the mere application or interpretation of the policy or procedure itself does not fall within the jurisdictional reach of the federal courts.

MWAA reads too much into *Firefighters Local*. Our case is different in this critical respect: We are presented with a claim that MWAA violated the terms of the Lease itself. In *Firefighters Local*, the court resolved a claim that MWAA had violated a provision of a state labor code, which had its own detailed enforcement mechanism. We do not face such an impediment to federal jurisdiction in this case. Thus, our determination that federal court is a proper forum for a Lease enforcement action under § 49104(c) is not inconsistent with *Firefighters Local*.

### III.

MWAA argues that even if the federal courts have jurisdiction, WDT does not have standing to bring this action. MWAA does not suggest that WDT lacks Article III standing or that prudential considerations preclude WDT from bringing suit. Rather, MWAA has framed this issue simply as one of statutory standing — whether Congress intended to confer standing on a litigant like WDT to bring an action under § 49104(c). Our task is essentially one of statutory construction. The provision at issue indicates that "[t]he Attorney General or an aggrieved party may bring an action *on behalf of the Government*" to compel MWAA to comply with the terms of the Lease. 49 U.S.C.A. § 49104(c) (emphasis added). MWAA concedes that WDT is "aggrieved" within the meaning of § 49104(c), but argues that WDT does not have standing to bring this action on its own behalf under § 49104(c) in view of the statutory command that such an action be brought "on behalf of the Government."

WDT, however, contends that the original language of the Enabling Act, as set forth in the Statutes at Large, differs significantly from the codified version of the Enabling Act and clearly permits WDT to bring this action: "An action may be brought on behalf of the United States by the Attorney General, or by any aggrieved party." 100 Stat. 3341-381. MWAA argues that the codification of the Enabling Act did not work a change in the meaning and, under either

version, an aggrieved party must bring an action on behalf of the Government, if at all.

We disagree. We read the language of the original enactment to allow an "aggrieved" party to bring an enforcement action in its own right, and to permit the Attorney General to bring such an action *on behalf of* the Government. If Congress truly intended an aggrieved party to bring an action on behalf of the federal government, it is surprising there is no requirement that the aggrieved party seek the consent of the Government before proceeding, or, at the very least, inform the Government of its intent to proceed on behalf of the Government, as would a private relator in a qui tam action under the False Claims Act. *See* 31 U.S.C.A. § 3730(b) (West Supp. 2001). Our reading of this provision, we note, is confirmed by the legislative history. *See* 131 Cong. Rec. S4879, S4887 (daily ed. April 26, 1985) (explaining, in a section-by-section analysis of the Enabling Act, that the "failure to observe [the mandatory] or other conditions of the lease would be the basis for the Attorney General (on behalf of the United States) or another aggrieved party to seek judicial enforcement of the lease."). Thus, we conclude that the Statutes at Large and the United States Code contain inconsistent provisions with respect to whether a private party, provided that it is "aggrieved," can bring an action on its own behalf against MWAA to enforce the Lease.

The statutory text contained in the United States Code is "prima facie" evidence of what the law is. *See* 1 U.S.C.A. § 204(a) (West 1997). The Statutes at Large, however, are "legal evidence" of the law. *See* 1 U.S.C.A. § 112 (West 1997). Accordingly, if there is a discrepancy between the two, the codified version of the law must yield to the Statutes at Large. *See United States Nat'l Bank of Oregon v. Independent Ins. Agents of America, Inc.*, 508 U.S. 439, 448 (1993); *United States v. Welden*, 377 U.S. 95, 98 n.4 (1964). By the same token, Congress has enacted some (slightly less than half) of the titles of the United States Code into positive law, in which case the text of the Code also becomes "legal evidence of the laws." 1 U.S.C.A. § 204(a).[2] Title 49 was enacted into positive law prior to the passage

---

[2]The Office of Revision Counsel submits to Congress the *United States Code*, one title at a time, for enactment into law. *See LaCrosse v.*

of the Enabling Act, *see* Pub. L. 95-473, 92 Stat. 1337 (1978), and the Enabling Act was subsequently codified by congressional enactment and incorporated into Title 49, *see* Pub. L. 105-102, 111 Stat. 2204-2217 (1997).

Even if there is a conflict between the original Congressional enactment contained in the Statutes at Large and a codification that has been enacted into positive law, the Statutes at Large control when (1) the meaning of the original enactment was "clear and quite different from the meaning . . . ascribe[d] to the codified law," and (2) "the revisers expressly stated that changes in language resulting from the codification were to have no substantive effect." *Cass v. United States*, 417 U.S. 72, 82 (1974); *see Welden*, 377 U.S. at 98 n.4; *see also Finley v. United States*, 490 U.S. 545, 554 (1989) ("[I]t will not be inferred that Congress, in revising and consolidating the laws, intended to change their effect unless such intention is clearly expressed." (internal quotation marks omitted)). The Act that codifies the Enabling Act expressly disclaims the intent to make any substantive change in the law. *See* Pub. L. 105-102, § 4(a), 111 Stat. 2204, 2216. Because the codification of the Enabling Act resulted in a change that altered its substantive effect, we look to the Statutes at Large which, as we have explained, confer standing on WDT to bring this action on its own behalf.

## IV.

For the foregoing reasons, we conclude that the district court has jurisdiction over the action brought by WDT. We further hold that, under the circumstances here, WDT has standing to bring such an

---

*Commodity Futures Trading Comm'n*, 137 F.3d 925, 927 n.1 (7th Cir. 1998). When Congress enacts a title of the Code into "positive law," it puts its authoritative imprimatur on the language appearing in that particular title of the Code. *See generally* Norman J. Singer, *Sutherland Statutory Construction* § 36A:10 at 132 (6th ed. 2001) ("[T]he text of a code section in an enacted title can be taken as authoritative and need not be checked or verified with the corresponding section in the original Statutes at Large, which must be done with respect to those titles which have not yet been enacted.").

action. We express no opinion, however, on the underlying merits of WDT's claim that MWAA failed to comply with the provisions of the Lease. Accordingly, we remand this case for further proceedings consistent with this opinion.

*REVERSED AND REMANDED*