825 F.2d 410
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Harry DITTMAR and Harold Orloff, Plaintiffs-Appellees,
Cross-Appellants,
v.
ETHYL CORPORATION, Defendant-Appellant, Cross-Appellee.
 Nos. 85-1879, 85-1909
 United States Court of Appeals, Sixth Circuit.
 Aug. 6, 1987.
 
 Before KEITH and JONES, Circuit Judges, and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-Appellant Ethyl Corporation (Ethyl) appeals a judgment of the United States District Court for the Eastern District of Michigan which upheld a jury verdict finding that Ethyl had impermissibly discharged two of its employees, plaintiffs-appellees Harry Dittmar and Harold Orloff (plaintiffs) on the basis of age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. Sec. 621 et seq. and Michigan's Elliott-Larsen Civil Rights Act, MCLA 37.2101 et seq. Ethyl now contends that the verdict was unsupported by the evidence, that evidence was improperly admitted, and that liquidated damages should not have been awarded. We hold that there was sufficient evidence, properly admitted, to support the jury finding of discrimination, but not sufficient proof of willfulness to support an award of liquidated damages and therefore affirm in part and reverse in part. Plaintiffs have cross-appealed, claiming that the district court erred by holding information which they sought need not be produced in discovery and by granting two of Ethyl's motions in limine which excluded certain evidence to prove age bias. Since we hold that the evidence which was admitted was insufficient to support a finding of willfulness and thus an award of liquidated damages, and since we find that even if the evidence of which plaintiffs unsuccessfully sought admission had instead been admitted, plaintiffs still would not have made a case of willfulness to be submitted to a jury, we deny a new trial to the plaintiffs on the issue of liquidated damages.
 
 
 2
 After some inter-departmental transfers throughout the years within Ethyl, a Virginia corporation primarily involved in the development and sale of chemical products, plaintiffs last worked for several years as professionals in the company's Commercial Development Department (CD). This section of the company is responsible for getting Ethyl's new products and newly-discovered uses of older products to the market and for pinpointing market needs that Ethyl could meet. One of the plaintiffs, Dittmar, born May 24, 1922, was hired in October of 1947. The other plaintiff, Orloff, born November 24, 1915, was hired in December of 1947.
 
 
 3
 As members of a department constituting part of Ethyl's Research and Development section (R&D), the plaintiffs worked at Ethyl's Ferndale (Detroit) Research Laboratories. In fact, they were the only CD employees in Detroit; the other CD employees were located at Ethyl's Baton Rouge facilities. They reported to the head of CD in Baton Rouge and carried out their duties from Detroit, much as did CD employees from Baton Rouge.
 
 
 4
 In late 1982, Roger Moser (Moser), the recently-appointed senior vice-president in charge of R&D, decided to close the Detroit Research Laboratory because of Ethyl's financial difficulties. Moser decided that he would transfer to Baton Rouge only research chemists who worked in the Petroleum Chemical Research (PCR) unit at the Detroit lab, the entire PCR unit being located in Detroit at that time. Citing an alleged reduction in force resulting from economic troubles, Ethyl, in October of 1982, informed the plaintiffs, who were not research chemists, that their employment would be terminated. Dittmar and Orloff were 60 and 66 years old respectively at the time.[1]
 
 
 5
 The plaintiffs filed a complaint in district court on December 16, 1983, alleging age discrimination. Plaintiffs contended that Ethyl, just before and after their termination, assigned younger persons to the CD who were equally or less qualified to do the plaintiffs' former work. Plaintiffs also asserted that Ethyl had previously exercised age-conscious employment policies, pressuring some of its older employees into early retirement and disproportionately providing job opportunities to younger employees.
 
 
 6
 In fending against the plaintiffs' motions to compel during the discovery phase of the proceedings, Ethyl principally asserted that the discovery requests at issue concerned departments other than CD (namely PCR) or time periods other than 1982-83 and therefore were irrelevant to the present dispute. In a July, 1984 memorandum opinion and order, a magistrate resolving this particular matter granted only some of these requests with which Ethyl had refused to comply. On August 31, 1984, the district court denied plaintiffs' appeal of the magistrate's determination.
 
 
 7
 Ethyl later filed four motions in limine to exclude evidence as well as a motion for summary judgment. Although unsuccessful on two of the motions in limine and on the motion for summary judgment, Ethyl did prevail on its other two motions in limine, one of which was to exclude evidence regarding Ethyl's succession/manning tables--organizational charts containing information, including the ages and replacement dates, about Ethyl's high level corporate officers.[2] The other successful motion precluded testimony of, and regarding, seven terminated employees of the PCR (not transferred to Baton Rouge), five of whom were 54 years old or older.[3]
 
 
 8
 On June 7, 1985, a jury rendered a verdict in plaintiffs' favor, having found them victims of age discrimination. Soon after, the court, on September 19 of that year, entered a judgment awarding $593,639.60 to Dittmar and $141,858.40 to Orloff.[4] The next month, the court issued an order denying Ethyl's motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial, concluding that the verdict was 'justified by the proof presented and [was] not excessive.'
 
 
 9
 * In determining whether an ADEA plaintiff has raised a prima facie case of age discrimination, this court has repeatedly held that the analogous criteria in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973),[5] for establishing a case of prima facie discrimination should not be strictly and automatically applied in all age discrimination cases. See, e.g., Wilkins, 790 F.2d at 520 n.3; LaGrant, 748 F.2d at 1090; Rose v. National Cash Register Corp., 703 F.2d 225, 227 (6th Cir.), cert. denied, ---- U.S. ----, 104 S. Ct. 352 (1983); Blackwell v. Sun Electric Corp., 696 F.2d 1176, 1179 (6th Cir. 1983); Ackerman v. Diamond Shamrock Corp., 670 F.2d 66, 69 (6th Cir. 1982). In this context, we have held that, in a reorganization or reduction of force situation, the ADEA plaintiff must, in addition to satisfying the McDonnell Douglas test, present direct, circumstantial or statistical evidence that age was a factor in his termination to make a prima facie case. Ridenour v. Lawson Co., 791 F.2d 52, 57 (6th Cir. 1986); LaGrant, 748 F.2d at 1091. Under such a situation, the plaintiff has no prima facie case when he merely shows that he was terminated during an economic cut-back and his employer retained a younger person in a position that the plaintiff was qualified to fill and for which he was willing to relocate. Sahadi v. Reynolds Chemical, 636 F.2d 1116, 1118 (6th Cir. 1980). However, as we explained in Rose, a plaintiff may make a prima facie case under the ADEA by simply presenting evidence, 'which, when viewed in the light most favorable to the plaintiff, would permit a reasonable jury to find that he was discharged because of his age.' 703 F.2d at 227.[6]
 
 
 10
 Now, we must first resolve whether there was sufficient, properly admitted evidence to raise a question for the jury concerning the decisiveness of plaintiffs' ages in Ethyl's determination to terminate them. In arguing that its motion for a judgment notwithstanding the verdict should have been granted, Ethyl asserts that reasonable jurors could not have properly concluded that the decision to discharge the plaintiffs was based on age. However, although this case is indeed a close one, we believe that the jury could.
 
 
 11
 Ethyl contends that the evidence regarding the CD in Baton Rouge from 1982-1984, the time during and after Moser's decision to close the Detroit facility, is irrelevant because the employee movement thereafter in Baton Rouge was unrelated to Moser's decision to end research operations in the Detroit lab. However, we believe that the district court correctly viewed the evidence as relevant to the present dispute since such proof indicates that the plaintiffs' terminations may not have strictly resulted from a phase-out of their job duties in a reduction of force scenario. More specifically, such evidence shows how younger personnel, later brought into Ethyl's CD department, assumed many of the plaintiffs' prior projects. In fact, we note that during the time between the announcement of their discharge and their last day of work, the plaintiffs actually helped acclimate some of their younger replacements to their work projects. Moreover, there was evidence that the total professional staff in CD did not decrease at the time or after the plaintiffs were terminated.
 
 
 12
 Without more proof, the present case might be, as Ethyl contends, analogous to Sahadi. However, the plaintiffs also tendered circumstantial evidence indicating Ethyl's discriminatory animus. First, there was evidence regarding a report prepared in 1981 by William Peeples, who was employed by Ethyl first as the manager of human resources and then as director of human resources from July of 1978 through August of 1982.[7] Dr. Foster, an R&D official, summarizing Peeples' opinion as reflected by the report, recalled that 'it [the report] said that the average age [of employees within R&D] had been increasing for a number of years, and that that could indicate a potential lessening of overall departmental effectiveness.'
 
 
 13
 Ethyl objected to the admission of this evidence, arguing that (1) the Peeples Memorandum had no evidentiary nexus to Moser and (2) Dr. Foster's recollections about the document were hearsay. Yet, notwithstanding the fact that Moser was not head of R&D when the Peeples report was issued, certainly a report made by an Ethyl official is some evidence of Ethyl's concern with age at that time. Moreover, Dr. Foster's comments regarding the contents of the memorandum were certainly admissible since his testimony was based on his having read the memorandum; it was not hearsay as to the contents of the memorandum. Further, the memorandum was a statement made by an Ethyl official within his authority as such. Thus, the document can be viewed as a statement by Ethyl, via its director of human resources, that indicated the company's age consciousness in employment decisions. We therefore conclude that the district court properly admitted this evidence.
 
 
 14
 Second, there are the notes of interviews with Ethyl officers from members of the Boston Consulting Group (BCG), retained in late 1981 by Ethyl (after Peeples' report), to make suggestions on improving the profitability of the R&D. Although no discussion of staffing patterns appeared in BCG's final report to Ethyl and age was not a main issue discussed in meetings between the consultants and R&D employees, there are indications in these documents that Ethyl officials were concerned about the adverse effect in R&D of the advanced age of some of the professionals in that department.
 
 
 15
 Ethyl contends that the BCG notes show, at best, the possible age consciousness of the consultants, not Moser, and constitute nothing more than irrelevant hearsay.[8] With regard to the relevance issue, we believe that although Moser may not have actually seen the BCG report or participated in its compilation, we believe that these notes are some evidence of Ethyl officials' preoccupation with the age of R&D personnel. Further, with regard to the hearsay issue, we believe that these notes, introduced in evidence through the BCG persons who made them, were admissible as evidence of the state of mind of the Ethyl officials who were interviewed. See Fed. R. Evid. 803(3) ('state of mind' exception to the hearsay rule). Moreover, the noted statements, reflecting what Ethyl officials had said, may be viewed as vicarious admissions of Ethyl under Fed. R. Evid. 801(d)(2).
 
 
 16
 We therefore conclude that, when considered in sum, the evidence was sufficient to get the issue of age discrimination to the jury and to support a subsequent finding of discrimination. The district court did not err by denying Ethyl's motion for a judgement notwithstanding the verdict since, with all inferences drawn in favor of the plaintiffs, the evidence failed to point so strongly in Ethyl's favor that 'reasonable minds could not have come to a different conclusion.' See Ridenour, 791 F.2d at 55 (provides standard of appellate review).
 
 II.
 
 17
 Section 7(b) of the ADEA, 29 U.S.C. Sec. 626(b) provides that liquidated damages are available 'only in cases of willful violations.' The Supreme Court, in Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 83 L.Ed.2d 523, 538 (1985), accepted a definition of 'willful' previously adopted by the Second Circuit in the same dispute, 713 F.2d 940, 956 (2d Cir. 1984) which provided that a violation is willful if: 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA.' A finding of age discrimination does not automatically mark a willful violation of the ADEA. See Trans World Airlines, 83 L.Ed.2d at 535.
 
 
 18
 Because Ethyl had some real financial concerns which led to the reduction in personnel by the closing of the Detroit facility and because this closing was certainly not a scheme adversely affecting only the plaintiffs, we do not see the necessary requisite of knowing or reckless disregard of the ADEA and the plaintiffs have not shown otherwise. Ethyl was certainly concerned with increasing the efficiency of the R&D. While there was evidence from which the jury could conclude that age was a causitive factor in the decision to terminate the plaintiffs as active employees, there is no evidence that Ethyl consciously or recklessly disregarded the requirements of the Act. Ethyl was not even accused of making a decision based on age until well after the decision was made.
 
 III.
 
 19
 The plaintiffs have filed a cross-appeal, contending that the district court erred by not allowing the discovery and admission of certain evidence which allegedly demonstrated Ethyl's discriminatory conduct. After reviewing such unadmitted evidence, we conclude that, even if admitted, it would not have made a case of knowing or reckless disregard of the Act and consequently the plaintiffs are not entitled to a new trial on the issue of liquidated damages.
 
 
 20
 For the foregoing reasons, we affirm in part and reverse in part the judgment of the district court as well as dismiss the plaintiffs' cross-appeal.
 
 
 
 [1]
 April 30, 1983 was the plaintiffs' final day of employment
 
 
 [2]
 Despite plaintiffs' contention that these charts were highly pertinent, as they indicated the age consciousness of Ethyl's personnel department, the court found that the risk of unfair prejudice outweighed the 'minimally probative' value of such evidence and thus excluded it pursuant to Fed. R. Evid. 403. The court also noted that neither plaintiff was included on the tables
 
 
 [3]
 The plaintiffs asserted that these terminations were prompted by Ethyl's desire to replace older employees with younger ones and evinced a pattern of discriminatory practices which also resulted in their terminations in the CD. The court determined that such evidence, if allowed, would 'confuse' the issues before the court since plaintiffs were not members of the PCR nor qualified for positions therein and since such an evidentiary admission would necessarily involve collateral issues such as the performance records of the seven discharged employees as against the forty-nine employees transferred to Baton Rouge
 
 
 [4]
 As the younger of the two plaintiffs, Dittmar received a substantially larger award for future economic loss. Dittmar's award adds as follows: $50,000--past economic loss, $400,000 future economic loss, $9,000 pain and suffering, $50,000 liquidated damages and $84,639.60 interest. Orloff's award consists of: $40,000--past economic loss, $43,000 future economic loss, $3,000 pain and suffering, $40,000--liquidated damages and $15,858.40--interest
 The court also awarded to the plaintiffs their costs and attorneys' fees to be later determined.
 
 
 [5]
 The McDonnell Douglas requirements, in relation to an ADEA case, provide for the establishment of a prima facie case upon the plaintiff's demonstration that (1) he was a member of the protected class; (2) he was discharged; (3) he was qualified for the position; and (4) he was replaced by a younger person. See Wilkins v. Eaton Corp., 790 F.2d 515, 520 (6th Cir. 1986); LaGrant v. Gulf & Western Mfg. Co., 748 F.2d 1087, 1090 (6th Cir. 1984)
 
 
 [6]
 The Elliott-Larsen Civil Rights Act imposes the same burden of proof. Matras v. Amoco Oil Company, 424 Mich. 675, 682-83, 385 N.W.2d 586, 589-90 (1986). Since the plaintiffs do not place separate reliance on Elliott-Larsen, we conclude that the statute has no independent significance in this litigation
 
 
 [7]
 Although the actual report was not presented at trial, Peeples and a former head of R&D before Moser, Dr. Walter Foster, testified concerning the report by deposition
 
 
 [8]
 It appears that the final BCG report to Ethyl was not introduced as evidence, but only the handwritten notes of the consultants before their completion of the report