892 F.2d 1044
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John RUSSELL, Plaintiff-Appellant,
v.
TELEDYNE OHIO STEEL; Teledyne Industries, Inc., Defendants-Appellees.
 No. 89-3254.
 United States Court of Appeals, Sixth Circuit.
 Jan. 8, 1990.
 
 Before BOYCE F. MARTIN, Jr., NATHANIEL R. JONES and RALPH B. GUY, Jr., Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant, John Russell, appeals the district court's summary judgment dismissal of his age discrimination claims brought pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 623(a), et seq. (ADEA), and Ohio Rev.Code Ann. § 4101.17 (Baldwin 1983). We affirm.
 
 I.
 
 2
 Russell began employment with defendant-appellee, Teledyne Ohio Steel (Teledyne), in 1979. Prior to his employment with Teledyne, Russell, who is a metallurgical engineer with training in business administration and statistical process control, was employed in various positions in the steel industry, including that of Vice-President of Manufacturing for the National Roll Division of General Steel Castings Corporation. In 1979, Russell was hired as a Foundry Superintendent by Richard Sherlock, who was then president of Teledyne. As Foundry Superintendent, Russell managed the operations of the iron and steel foundries and supervised the work of more than 300 Teledyne employees. In 1980, Russell was promoted to Manager of Operations and in 1981 was promoted to Vice-President of Operations. There is no dispute that Russell performed competently in the latter positions. However, in 1983 Andrew Blaskovich was hired to assume the position of Vice-President of Operations, and Russell was demoted to the position of Vice-President of Engineering and Technical Services. Sherlock made the decision to hire Blaskovich. Although Russell had been next in line to become president of Teledyne, it was apparently understood by both Sherlock, age 62, and Russell, age 60, that someone more junior than either of them would assume the presidency upon Sherlock's retirement. J.App. at 170-71, 203. Despite reduced responsibilities as Vice-President of Engineering and Technical Services, Russell performed important functions related to the development of statistical process control (SPC), a process thought to increase the quality of steel, and was also given responsibility for opening Teledyne's machine shop for the manufacture of small weight steel rolls in Arkansas. In March of 1985, Russell was demoted to Director of SPC, but before the demotion became effective Russell was terminated. Russell was 62 years old at the time of his discharge. Tom Lassiter, who is younger than Russell but whose age is not revealed by the record, assumed the position of Vice-President and was assigned responsibility for supervision of Teledyne's Arkansas facility. Dick McGraw, age 51, Gene Lee, age 42, and Brian Kelly, age 26, assumed Russell's SPC development responsibilities.
 
 
 3
 Russell commenced this action against Teledyne in the United States District Court for the Northern District of Ohio. The complaint alleged that Russell was discharged from employment on the basis of age in violation of ADEA. It also alleged pendent state claims of age discrimination in violation of Ohio Rev.Code Ann. § 4101.17 and breach of contract. The case was referred to Magistrate James G. Carr. In moving for summary judgment on Russell's age discrimination claims, Teledyne argued that a financial crisis beginning in November 1984, had precipitated a corporate reduction in forces. Projected losses in excess of two million dollars for 1985 prompted Guy Madden, who became President of Teledyne in March of 1985, to approve Blaskovich's decision to eliminate the position of Director of SPC and redistribute its responsibilities. Russell maintained that his discharge violated ADEA and its state law analog, Ohio Rev.Code Ann. § 4101.17, and was a breach of his employment contract.
 
 
 4
 Applying the elements of a prima facie case for employment discrimination established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), as adapted to ADEA cases, the district court found that Russell was a member of the group protected by ADEA; that his termination constituted an adverse employment action; and that Russell was qualified for the positions he held during his six-year tenure at Teledyne. However, the district court held that because Russell could not show that he was replaced by a newly-hired, younger employee who assumed his former duties, Russell had to proffer other direct or circumstantial evidence controverting Teledyne's stated justification for his discharge. J.App. at 22, 23-24. The district court interpreted McDonnell Douglas and Sixth Circuit precedent concerning age discrimination in work force reduction cases as requiring that a discharged employee be replaced by a newly-hired, younger worker; a showing by the discharged employee that his former duties were redistributed among existing, younger personnel would be insufficient to withstand summary judgment. Id. at 22. Although Russell presented other proof of age discrimination in addition to demonstrating a redistribution of his duties among younger, existing employees, the district court found this evidence insufficient to create a dispute as to a question of material fact. First, the district court found that Russell had taken out of context statistics related to the termination of Teledyne employees from 1982 to 1985. Furthermore, the court viewed with suspicion the relatively small size of Russell's sample--a class of forty employees. Id. at 27-28. The district court also determined that neither the statements of Teledyne officials to the effect that terminating older employees saves more money than terminating younger ones, nor the company's alleged failure to follow its affirmative action policy, were not sufficiently probative of an intent to discriminate based upon age to withstand summary judgment. Id. 29-30. Finally, the district court concluded that Sherlock's testimony that he believed Russell's discharge was based on age was unsubstantiated personal opinion and did not rebut Teledyne's claim that Russell's dismissal was a consequence of a legitimate business decision to reduce manpower. Accordingly, the district court entered summary judgment for Teledyne on Russell's age discrimination claims and dismissed his pendent breach of contract claim.
 
 II.
 
 5
 An appellate court's review of a district court's grant of summary judgment is a de novo evaluation. Pinney Dock and Transport Co. v. Penn Corp., 838 F.2d 1445, 1473 (6th Cir.1988). Fed.R.Civ.P. 56(c) authorizes a court to enter summary judgment on a claim if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." The nonmoving party must make a showing adequate to establish the existence of an essential element of his case on which he would shoulder the burden of proof at trial. Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2553 (1986).
 
 
 6
 Russell first contends that the district court erroneously required him to demonstrate that he was replaced by a younger, newly hired employee. He argues that a prima facie case of age discrimination may be established where the discharged employee demonstrates that economic considerations led the employer to dismiss the plaintiff while retaining a lower-salaried, younger, existing worker to perform the same duties. ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). This court has applied the McDonnell-Douglas criteria for establishing a race discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. (1982), to age discrimination claims. Thus, a plaintiff who alleges age discrimination in violation of ADEA must demonstrate that: (1) he was a member of the class entitled to the statute's protection, persons ages forty to seventy; (2) he was discharged; (3) he was qualified for the position from which he was discharged; and (4) he was replaced by a younger person. Ackerman v. Diamond Shamrock Corp., 670 F.2d 66, 69 (1982).
 
 
 7
 Notwithstanding our adoption of the McDonnell-Douglas criteria, however, we have held that the criteria need not be applied automatically and that a plaintiff establishes a claim of age discrimination where he demonstrates that age was a substantial factor in his discharge. Laugeson v. Anaconda Company, 510 F.2d 307, 312 & 317 (6th Cir.1975). A plaintiff establishes a prima facie case of age discrimination when he presents evidence "which, when viewed in a light most favorable to the plaintiff, would permit a reasonable jury to find that he was discharged because of age." Rose v. National Cash Register Corp., 703 F.2d 225, 227 (6th Cir.1983). In this regard, the district court properly considered Russell's other direct, circumstantial and statistical evidence in determining whether he had established a his prima facie case. See J.App. at 27-32.
 
 
 8
 Insofar as Russell attempts to make out his prima facie case by demonstrating that his position as SPC Director was eliminated under a reduction in forces plan and that younger, existing personnel assumed his redistributed duties, the law in the Sixth Circuit is clear that such evidence is insufficient. "When there is a corporate reorganization or reduction in forces, a prima facie case is not established when plaintiff does not show that he was replaced by a younger person LaGrant v. Gulf & Westin Mfg. Co., Inc., 748 F.2d 1087, 1090 (6th Cir.1984). The replacement must be newly hired for the position formerly held by the plaintiff, younger, existing employees who survive the corporate reduction in forces and assume the redistributed responsibilities of terminated employees are not replacements. This is because it is presumed that in corporate work force reductions, the duties of terminated employees will often be assumed by those who remain. We have declined to infer discriminatory intent from the fact that some workers are discharged while others remain to assume their duties: "The mere termination of a competent employee when an employer is making cutbacks due to economic necessity is insufficient to establish a prima facie case of age discrimination." Id.; see also Sahadi v. Reynolds Chemical, 636 F.2d 1116, 1118 (6th Cir.1980) (per curiam).
 
 
 9
 Russell cites two cases from the Seventh and First Circuits, Metz v. Transit Mix, Inc., 828 F.2d 1202 (7th Cir.1987), and Wildman v. Lerner Stores Corporation, et al., 771 F.2d 605 (1st Cir.1985), for the proposition that a company's replacement of a higher-salaried, older employee with a lower-salaried, younger employee, whether newly-hired or existing, is not a legitimate business justification for an older employee's discharge. Metz and Wildman, however, are inapplicable because they are not cases in which a plaintiff's position was eliminated due to a reduction in forces, but rather they are cases in which employers fired older employees and subsequently filled the vacant positions with younger, existing employees who received lower salaries. Russell's case is not analagous because his position was extinguished in the context of economic cutbacks--he was not merely fired and replaced by younger, cheaper labor. We conclude that the district court correctly held that evidence that Russell's duties were redistributed to younger, existing employees was not probative of an intent to discriminate based on age. Russell must present other direct and circumstantial proof of age discrimination to establish a prima facie case.
 
 
 10
 Russell maintains that statements by Guy Madden and Lou Dverka regarding Teledyne's poor financial condition in 1985 and the savings that could be realized by terminating older employees show of an intent to discriminate based on age. Madden testified at his deposition that Russell's salary was one of the factors considered in deciding to eliminate the SPC Director's position. J.App. at 148. Dverka, Teledyne's Chief Financial Officer, acknowledged that given the choice between retaining a younger employee versus retaining an older employee of equal ability, Teledyne would retain the younger worker "to save more costs." Id. at 117. Madden's comments simply reveal an inevitable fact of work force reductions: a company will likely consider the salaries of positions in determining which ones to eliminate. Without more, this consideration does not imply age animus. Although Madden acknowledged that Russell's salary was one of the highest for the area of the company in which he worked at the time of his termination, Madden did not concede, and Russell presented no other evidence, that there was a direct correlation between his seniority and his salary. Dverka's comments, while possibly more probative of an intent to discriminate, were made in response to a hypothetical question. Even if Teledyne was predisposed to discriminate on the basis of age, Dverka's testimony does not reveal that Teledyne acted on its predisposition when it eliminated Russell's position and discharged him. Taken alone, Madden and Dverka's testimony does not controvert the stated economic justification for Russell's dismissal.
 
 
 11
 Russell argues that when Madden and Dverka's testimony is considered in conjunction with statements made by former Teledyne President Richard Sherlock, Teledyne's failure to follow its affirmative action policy, and statistical evidence, a prima facie case is established. Sherlock testified that he expected Russell's dismissal because if Russell had continued to work he would have been entitled to a pension. Id. at 168. However, the record reveals that Russell's discharge did not affect his eligibility for a pension and that Russell became eligible as of his sixty-fifth birthday. Id. at 108. With regard Teledyne's failure to follow its affirmative action policy, Russell argues that Teledyne's policy required the company to base staff reductions on seniority and performance and to give senior employees the option of being demoted rather than terminated. While a company's violation of its own affirmative action policy may be probative of an intent to discriminate, our review of Teledyne's affirmative action policy reveals no provision for giving an employee the option of being demoted when work forces are being cut back generally. See id. at 83. Generally, "[w]here an employer reduces his work force for economic reasons, it incurs no duty to transfer an employee to another position within the company." Ridenour v. Lawson Co., 791 F.2d 52, 57 (6th Cir.1986).
 
 
 12
 Finally, the statistics Russell uses to demonstrate that older employees were disproportionately affected by Teledyne's adverse employment decisions between 1982 and 1985 appear to be taken out of context. Using a sample of forty salaried employees, Russell contends that twenty-seven employees over the age of forty were terminated, given early retirement or transferred to hourly status. However, Russell fails to note that fourteen of the twenty-seven members of the protected class either voluntarily retired, quit or were assigned to disability. J.App. at 104-07. Twelve members of the protected class of employees were adversely affected by terminations or reassignment to hourly wage employment. Id. Comparatively, nine members of the non-protected group were adversely affected by terminations or reassignment. The disproportionate impact is quite small and is therefore not sufficiently probative of an intent to discriminate based on age to withstand summary judgment.
 
 
 13
 Taken as a whole, Russell's circumstantial evidence does not establish a genuine question of material fact as to whether age was a substantial factor in his termination.[1]
 
 III.
 
 14
 For the foregoing reasons, we AFFIRM the judgment of the district court.
 
 
 
 [1]
 Because Ohio's age discrimination statute is patterned after ADEA, see Baker v. Scovill, Inc., 6 Ohio St.3d 146 (1983), the foregoing analysis is also applicable to Russell's cognate state age discrimination claim