**UNITED STATES of America, upon the relation and for the Use of the TENNESSEE VALLEY AUTHORITY**

**v.**

**EASEMENTS AND RIGHTS OVER CERTAIN LAND IN HAMILTON COUNTY, TENNESSEE, Containing a Total of 1.2 Acres, More or Less,**

**Chattanooga Traction Company.**

**No. 4122.**

United States District Court
E. D. Tennessee, S. D.

Sept. 7, 1966.

Charles J. McCarthy, Thomas A. Pedersen, and Beverly S. Burbage, T. V. A., Knoxville, Tenn., for plaintiff.

Hall, Haynes, Lusk & Foster, Chattanooga, Tenn., for defendant.

## OPINION

FRANK W. WILSON, District Judge.

This is an action for condemnation of a flood control easement by the Tennessee Valley Authority. The action was begun pursuant to the Tennessee Valley Authority Act of 1933 [48 Stat. 58 (1933) as amended, 16 U.S.C. Secs. 831–831dd (1958); Supp. V (1959–63)]. The easement taken involves a total of 1.2 acres of land belonging to the defendant, Chattanooga Traction Company. The case has now been duly heard by three commissioners appointed by the Court. The commissioners found that the benefits accruing to the whole of the defendant's land is greater than the value of the land taken together with any incidental damages and accordingly declined to make any award of compensation to the defendant. The case is now before the Court upon exceptions taken by the defendant to the action of the commissioners in denying any compensation. The defendant, in its exceptions, contends that the commissioners were in error in in the following respects: (1) in finding that the benefits accruing to the defendant's remaining land was greater than the value of the land taken plus any incidental damages to the remaining land; (2) in finding that there could be no damage to the defendant's remaining land due to erosion; (3) in failing to fix the value of the property condemned and make an award with respect to each parcel taken; (4) in finding that the benefits of the flood control project were special to the defendant's lands and not merely general to all landowners in the area; (5) in failing to specify the alleged special benefits and to assess their value; and (6) in failing to award any damage unto the defendant.

The parties waived a hearing before a three-judge court, as provided by the

T.V.A. Act, and by stipulation consented that the case should be heard by one judge. The case is accordingly before the Court upon the transcript made in the three-day trial before the commissioners and the briefs of the parties and is for decision de novo upon this record.

The acquisition by the Government of the easements herein condemned arises out of a project for the control of flood waters upon Stringers Branch, a tributary of the Tennessee River located in the municipality of Red Bank-White Oak, Hamilton County, Tennessee. The project was undertaken by the T.V.A. in agreement with the municipal officials of Red Bank-White Oak. Stringers Branch is a natural drainage branch draining some 6.2 square miles and running through much of the commercial area of Red Bank-White Oak. The branch has a known flood history extending back to 1920 and since that time it has flooded on an average of once each three years, the last two such floods having occurred in 1961 and 1963. The flood control project involved the widening and straightening of the channel, and in one area the relocation of the channel.

The defendant, a subsidiary of the Southern Railway System, owns rights-of-way in the area of Stringers Branch and the present action involves four tracts of land where the drainage easement encroaches upon the defendant's land, all four tracts totalling 1.2 acres. Three tracts involve improvement of the channel in its present location. A fourth tract, comprising .64 acres, involves a relocation of the channel at a point where existing structures had been built over the branch and restricted its flow.

The defendant has tracks located upon its right-of-way in the area where Stringers Branch runs in a southerly direction between the defendant's tracks and Dayton Boulevard, roughly paralleling the highway and the defendant's tracks in this area. The defendant also owns other lands originally purchased by it as a right-of-way, but never used for that purpose. This land is located in the area where Stringers Branch turns sharply in a westerly direction and flows underneath Dayton Boulevard. The flood control easements here taken do not interfere in any way with the defendant's tracks or with the defendant's present use of its lands other than to reduce the incidence of the flooding of its tracks. The defendant contends, however, that the relocation of the channel in one area does threaten its existing tracks with an erosion problem not previously confronting it and does render more costly any future bridging of the branch which would be necessary should it elect to use the right-of-way leading to the west.

■ In its first exception to the award of the commissioners, the defendant contends that the commission was in error both in fact and in law in finding that the benefit accruing to the remainder of the defendant's land by the flood control project was greater than the value of the easement taken plus any incidental damage. The defendant's initial contention in this regard is that the commissioners were in error as a matter of law in offsetting benefits found by them to have accrued to the defendant's land from the flood control project against the value of the easement taken plus any incidental damage to the remaining land. It is the defendant's contention in this regard that the commission erroneously relied upon 33 U.S.C. § 595, providing for such offsetting in connection with lands taken by the United States for the improvement of waterways, in that the statute applies only to navigable streams and Stringers Branch is not only not navigable, but is in fact merely a wet weather drainage branch, having little or no water in it during dry weather. The Court is of the opinion that the provisions of the said statute would properly apply to the improvement of any waterway by the United States, including a drainage branch of the nature here involved, and that its application would not be limited to navigable waters as contended by the defendant. There is nothing in the language of the statute itself which limits its operation to navigable waters and its unofficial codification under the title

"Navigation and Navigable Waters" would not operate to limit the Act to navigable waters only. See 1 U.S.C., Sec. 204(a) (1964); Nashville Milk Co. v. Carnation Co., 355 U.S. 373, 379–380, 78 S.Ct. 352, 2 L.Ed.2d 340 (1958); United States v. Welden, 377 U.S. 95, 98–99, n. 4, 84 S.Ct. 1082, 12 L.Ed.2d 152 (1964).

Apart from the applicability of the statute permitting the offsetting of benefits against the value of the land taken plus incidental damage, it is the defendant's contention that the evidence preponderates in favor of a finding of the value of the 1.2 acres taken plus incidental damage substantially in excess of the value of any direct benefits to the defendant's remaining land from the flood control improvement.

█ The Court is of the opinion, however, that the greater weight of the evidence supports the finding that the special and direct benefits to the defendant's remaining land exceeds the value of the land taken plus any incidental damage to the land remaining. In this regard the defendant's witnesses Blackburn and Bacon placed a fee value upon the 1.2 acres taken in the sum of $15,210 and $16,800, respectively. However, upon cross-examination each conceded that the relocation of the channel and the filling of the old channel enhanced the value of the defendant's remaining lands fronting upon Dayton Boulevard in an amount in excess of the value of the land taken. According to the testimony of witness Blackburn, the enhancement to the value of the land remaining exceeded the value of the land taken by $4,790. According to the testimony of the witness Bacon, the enhancement exceeded the value of the land taken by approximately $1,000.

The Court is of the opinion that the evidence preponderates in favor of a finding of the value of the 1.2 acres easement taken would be in the total sum of $2710. In this case the witnesses Wilbanks, Block and Clark testified to before and after values which would establish a market value for the 1.2 acres easement taken between $1,000

and $2255. The Court is of the opinion that their testimony is better supported by reference to comparative sales. These witnesses testified to direct enhancement values to the defendant's remaining land from the flood control improvements varying from a low of $12,355 to a high of $18,500 and to net enhancement, after offsetting the value of the easement taken, varying from $10,095 to $15,850. The Court is of the opinion that the weight of the evidence favors a finding of direct enhancement to the defendant's remaining land in the sum of $12,710, with a net enhancement to the defendant in the sum of $10,000. The major portion of this enhancement would be to that portion of the defendant's land fronting upon Dayton Boulevard, where the relocation of the channel and the filling of the old channel of Stringers Branch increased the usable depth of the defendant's land and lessened the flooding risk to such land. The remaining portion of the enhancement value to the defendant's land lies in the lessening of the flood risk and damage to the defendant's tracks. The evidence reflects that as a direct result of the flood control improvement to Stringers Branch, its channel will now safely carry, without flooding, 1.5 times the amount of water recorded in any known flood. The evidence further reflects that the defendant's tracks have been under flood upon at least three occasions from the flood waters of Stringers Branch in the 17-year period immediately prior to the improvement. (For the reasons hereinafter set forth, however, the Court is of the opinion that a separate award must be made with reference to each of three parcels, with direct benefits to one parcel not offsetting the value of land taken with respect to another parcel.)

█ The defendant seeks to avoid set off of benefits received upon the contention that such benefits were general to all landowners in the area and not special to its land. The fact that other adjoining landowners may have benefitted from the flood control improvement does not, however, render the benefits received by

the defendant general. United States v. River Rouge Co., 269 U.S. 411, 46 S.Ct. 144, 70 L.Ed. 339 (1926); Aaronson v. United States, 65 U.S.App.D.C. 14, 79 F.2d 139 (1935). Here the benefits testified to were directly received by the defendant by virtue of enlarging and rendering more valuable its highway frontage property and by virtue of eliminating flooding and flood damage to its tracks.

Although all issues of fact were disputed in the record, the major conflict in the evidence seems to lie in the testimony relating to the presence or absence of incidental damage to the defendant's remaining land. In this regard the defendant's witness, J. B. Sullivan, a railroad civil engineer, testified to incidental damages of from $19,000 to $72,000 caused by the increased threat of erosion to the defendant's tracks from the widening and relocation of Stringers Branch. The $19,000 estimate was based upon the cost to the Railroad of rip-rapping its banks adjacent to the stream and the $72,000 estimate was based upon the use of concrete retaining walls in lieu of rip-rapping. The defendant's witness, William Earthman, also a railroad civil engineer, testified to incidental damages in the total sum of $182,175, $76,675 of this amount being the cost to the defendant of rip-rapping its banks adjacent to the relocated branch and $105,000 being the increased cost to the Railroad of bridging the branch should it ever elect to use its right-of-way to the west. The defendant's witness, Daniel Lattimore, a real estate appraiser, testified to a value before the taking of $1,000,000 and a value after the taking of $925,000, the difference of $75,000 being his cost estimate for protecting the defendant's roadbed from the increased risk of erosion caused by the relocation of the branch.

The weight to be accorded the testimony of these witnesses is lessened by several factors. In the first place, the testimony of each witness appears to have been based not upon the known history of floods on Stringers Branch, but rather upon the hypothesis of a "regional flood" as described in T.V.A. Flood Control Reports, being a theoretical flood of unprecedented proportions. In the second place, neither of the witnesses appears to have knowledge of the flooding characteristics of Stringers Branch prior to the improvement nor the erosion threat to the defendant's roadbed by such flooding characteristics. Additionally, with respect to the witness Lattimore, his testimony is rendered of little value by his own prior appraisal of $116.00 as being the damage to the defendant's property by reason of the easements taken. With respect to the testimony of the defendant's witness Earthman in regard to the increased cost of bridging Stringers Branch in event defendant should elect to use its property to construct a track to the west, the possibility of such use appears too remote to be considered as a proper element of damage. Not only has such a western spur not been considered economically feasible in the 50 years the defendant has owned the right-of-way, but the denial to the defendant of a grade crossing over Dayton Boulevard, together with the acquisition of land for construction of an expressway through the defendant's land, thus severing its right-of-way to the west, eliminates any basis for claiming incidental damage due to increased cost of bridging the relocated Stringers Branch.

Finally, the testimony of the defendant's witnesses as to the existence of any incidental damage is overborne by the testimony of the plaintiff's witnesses to the contrary. Not only did the plaintiff's value witnesses, Wilbanks, Block and Clark, find no basis for awarding incidental damages, but also five engineers, Walter Emmons, Director of Engineering Design for the T.V.A., Robert Beuhler, Chief of T.V.A. Flood Control Branch, William Clark, T.V.A. Flood Control Engineer, Grant Martin, head of the Chattanooga Office of Hydraulic Control for T.V.A., and Charles Okey, a flood control engineer, formerly head of T.V.A. Flood Control Branch, each testified that

no erosion threat to the defendant's property existed as a result of the flood control improvements, but rather that the defendant's property was now protected from flooding to which it was formerly subjected.

■ In summary, the Court is of the opinion that the evidence preponderates in favor of a finding that the defendant has sustained no incidental damage to its remaining land by reason of the flood control easements taken.

■ There remains for decision by the Court the contention by the defendant that the commission was in error in failing to make a separate award and evaluation upon each of the four tracts where flood control easements were taken. The defendant's contention in this regard is based upon the T.V.A. Act, Sec. 831x, Title 16 U.S.C., wherein it is provided that the commissioners shall make "a separate award and valuation in the premises with respect to each separate parcel involved".

The problem here presented is one of statutory construction and involves the meaning of the word "parcel" as used in the above quoted statute. The plaintiff, without addressing itself in particular to the problem of defining the word "parcel", seeks to argue that where a project affects a piece of property at a number of points, there is no reason for requiring the commission to make a separate evaluation upon what is essentially a unit. The Court does not consider this responsive to the issue.

The word "parcel", as used with reference to land, is generally held to mean a contiguous quantity of land in the possession of an owner. 67 C.J.S. Parcel p. 559. In the case of United States ex rel. T.V.A. v. Indian Creek Marble Co., 40 F.Supp. 811 (D.C.E.D.Tenn.1941) the Court defined the word "parcel" in connection with a T.V.A. condemnation action in the following terms:

" * * * the contiguous land of an owner suited for similar uses is to be treated as a parcel, and the imposition of easements or the taking of parts

thereof are to be considered on the basis of their effect upon the market value of such contiguous property of the owner. Property of the same owner, even though contiguous, if dissimilar in the valuable uses to which it may be put, would not be within this general principle, if to arrive at just compensation it should become necessary to treat the property, even though contiguous, as distinct parcels."

The Court is of the opinion that upon the testimony in this record, although the four easements taken were all located upon contiguous lands owned by the defendant, when the uses to which the lands adjoining the four easements taken were considered, an award and valuation should have been made on the basis of three separate parcels of land. The valuable uses to which the defendant's land could be put were each different with respect to (a) the area of the .26 acre easement (Tract No. RB-WO 172E) located alongside Signal Mountain Boulevard, (b) the area of the two easements totalling .64 acres (Tract No. RB-WO 7E) located upon the land fronting Dayton Boulevard, and (c) the area of the .31 acre easement (RB-WO 173E) located near Culver Street, and accordingly each should have been treated as a parcel and a separate award and valuation should have been made by the commissioners with respect to each parcel in accordance with 16 U.S.C. 831x.

The Court is of the further opinion, however, that the error of the commissioners in this respect does not alter the result that the defendant would be entitled to no recovery under the evidence in this record. For it is the opinion of the Court that the evidence preponderates in favor of the following findings:

(a) With respect to the parcel involving easements totalling .26 acres (Tract No. RB-WO 172E) located along the defendant's right-of-way in the vicinity of Signal Mountain Bouelvard, the fair market value of the easement taken would be in the sum of $260.00, with no incidental damages and with direct benefits

to the defendant's remaining parcel in the sum of $260.00.

(b) With respect to the parcel involving easements totalling .64 acres (Tract No. RB-WO 7E) located upon the defendant's right-of-way fronting upon Dayton Bouelvard, the fair market value of the easements taken would be in the sum of $2,000, with no incidental damages and with direct benefits to the defendant's remaining parcel in the sum of $12,000.

(c) With respect to the parcel involving an easement totalling .31 acres (Tract No. RB-WO 173E) located upon the defendant's right-of-way in the vicinity of Culver Street, the fair market value of the easement taken would have been in the sum of $450.00, with no incidental damages and with direct benefits to the defendant's remaining parcel in the sum of $450.00.

A judgment will accordingly enter affirming the award of the commissioners and denying any recovery for the flood control easements taken.