FILED
11/07/2023
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 3, 2023 Session

## NATALIE C. GRIMSLEY v. PATTERSON COMPANY, LLC

**Appeal from the Chancery Court for Williamson County**
**No. 22CV-51320     Michael Binkley, Judge**

———————————————————

**No. M2022-00987-COA-R3-CV**

———————————————————

The Plaintiff brought suit against her former employer, alleging sexual harassment by her supervisor and claiming constructive discharge. The Employer moved to compel arbitration based on a provision in the Plaintiff's employment agreement. The Plaintiff responded by invoking the federal Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021, which the trial court concluded invalidates the mandatory arbitration provision. We reverse the trial court's decision because the harassment of the Plaintiff and her constructive discharge occurred prior to the effective date of the Act.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

JEFFREY USMAN, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Charles J. Mataya, Russell B. Morgan, and Tara S. Sarosiek, Nashville, Tennessee, for the appellant, Patterson Company, LLC.

Jason A. Lee, Nashville, Tennessee, for the appellee, Natalie C. Grimsley.

**OPINION**

I.

Patterson Company (Patterson), a Tennessee limited liability company, is a national commercial homebuilder. The company hired Natalie Grimsley as a Neighborhood Sales Manager[1] in 2014. Seven years later, Patterson hired Michael

---

[1] Neighborhood Sales Managers are licensed real estate professionals who oversee the entire sales

Bottoms and placed Ms. Grimsley under his immediate supervision. Shortly thereafter, according to the complaint, Mr. Bottoms "began to make sexual comments and to sexually harass" Ms. Grimsley.[2] Ms. Grimsley alleges that Patterson did not have any corporate safeguards, such as a human resources department, employee handbook, or sexual harassment policy, and that the absence of safeguards empowered Mr. Bottoms to continue this behavior. She resigned from her role at Patterson in December of 2021.

Ms. Grimsley sued Patterson in Williamson County Chancery Court on March 16, 2022. She claimed *inter alia* that Mr. Bottoms, while working in his capacity as Patterson's agent, created a "sexually hostile work environment" and sexually harassed her within the meaning of the Tennessee Human Rights Act. Ms. Grimsley sought a total of $2.5 million in damages.

Shortly thereafter, Patterson moved to compel arbitration. The company pointed out that Ms. Grimsley signed numerous Neighborhood Sales Manager (NSM) Agreements, each of which contained an arbitration provision. Patterson attached the most recent version that Ms. Grimsley signed in January of 2021 as an exhibit. Patterson directed the trial court to Section 10, entitled "Dispute Resolution," which reads:

> The Parties agree that all disputes, claims, or controversies between NSM and the Company arising out of NSM's employment or this Agreement, whether during NSM['s] employment or after the termination thereof, shall be resolved exclusively through confidential, private and binding arbitration. The arbitration of any such disputes will occur in Franklin, Tennessee or such other location as the Parties may agree. The costs of arbitration proceedings hereunder shall be borne equally by both Parties; each Party shall bear its own attorneys' fees. The Parties each hereby expressly waive their right to have disputes between them resolved by a court or jury. The Parties further expressly waive their right to pursue claims on behalf of a class or as a representative of others in arbitration under this Section.

In its original motion, the company argued that the Federal Arbitration Act (FAA) mandates enforcement of this predispute arbitration agreement.

In response, Ms. Grimsley invoked the federal Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (the Act). She explained that this Act amended the FAA to specifically allow victims of sexual harassment to void otherwise valid predispute arbitration agreements. Ms. Grimsley acknowledged that the Act "does

---

process in particular areas served by the company.

[2] Ms. Grimsley described numerous sexual comments that Mr. Bottoms made about her in 2021.

not technically apply to this case" because it includes a statutory note providing that it can only govern "any dispute or claim that arises or accrues on or after the date of enactment," March 3, 2022, and all of Mr. Bottom's harassment occurred prior to that date. Nevertheless, she argued that it should be given effect here to further Congress's stated desire to support victims of sexual harassment.

In its Memorandum and Order, the trial court went beyond the argument advanced by Ms. Grimsley. The trial court held that the Act actually does apply to her present lawsuit against the company and denied Patterson's request to compel arbitration. Though her complaint only targets harassment and discharge occurring before the Act took effect, the trial court emphasized that Ms. Grimsley *filed* her complaint "after the effective date of the Act." The trial court found that Ms. Grimsley's Neighborhood Sales Manager Agreement qualified as a "predispute arbitration agreement," that her case against Patterson involved a "sexual harassment dispute," and that her choice to file after the effective date opened the door to apply the Act. The trial court extensively examined whether applying the Act "would have a 'genuinely retroactive effect'" and concluded that it would not since the Act only modifies rules of procedure. Finally, after implicitly concluding that the FAA preempted Tennessee law on this point, the trial court denied Patterson's motion to compel.

Patterson appealed. The company's primary argument is that the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 cannot apply in this suit to void the parties' otherwise valid predispute arbitration agreement. The company contends that the Act does not apply to conduct that took place prior to the effective date of the law. In response, Ms. Grimsley argues that the trial court correctly applied the Act to her case. We respectfully disagree and reverse the trial court's ruling that the Act is applicable to the present case.

II.

The Tennessee Supreme Court has held that a trial court's decision to grant or deny a motion to compel arbitration in the face of undisputed facts presents a question of law, which may be reviewed de novo "without a presumption of correctness afforded to the trial court's conclusions." *Owens v. Nat'l Health Corp.*, 263 S.W.3d 876, 882 (Tenn. 2007), *rev'd on other grounds*, *Welch v. Oaktree Health and Rehabilitation Ctr. LLC*, 674 S.W.3d 881, 897 (Tenn. 2023); *Wofford v. M.J. Edwards & Sons Funeral Homes Inc.*, 490 S.W.3d 800, 807 (Tenn. Ct. App. 2015). This is true because "[a] trial court's order on a motion to compel arbitration addresses itself primarily to the application of contract law." *Rosenberg v. BlueCross BlueShield of Tenn., Inc.*, 219 S.W.3d 892, 903 (Tenn. Ct. App. 2006). While sometimes the task of deciding "whether the parties have a valid arbitration agreement at all . . . requires the consideration of matters outside of the pleadings," the Tennessee Supreme Court has recognized that other cases "attacking the agreement" on purely legal grounds "can be resolved solely as a matter of law." *Welch*,

674 S.W.3d at 889 (quoting *Elite Emergency Servs., LLC v. Stat Sols., LLC*, No. M2008-02793-COA-R3-CV, 2010 WL 845392, at *8 (Tenn. Ct. App. Mar. 10, 2010)).

III.

Ms. Grimsley contends that the claim or dispute did not arise or accrue until the civil action was filed or alternatively the later date when the company moved, in response, to compel arbitration. Both of these dates are after the effective date of the Act. We do not find either date, however, to be controlling. The Act does not govern her case because her "claim or dispute" neither arose nor accrued before the effective date of the Act.[3]

During the legislative process, Congress approved of a statutory note that provides an effective date for the Act. PL 117-90, March 3, 2022, 136 Stat 26.[4] According to the statutory note,

> This Act, and the amendments made by this Act, shall apply with respect to any claim or dispute that arises or accrues on or after the date of enactment of this Act.

PL 117-90, March 3, 2022, 136 Stat 26. The trial court concluded that plaintiffs can benefit from the Act so long as they *filed* their lawsuit after March 3, 2022.

In supporting the trial court's conclusion, Ms. Grimsley argues that the word "claim" links to the word "arises" and the word "dispute" links to the word "accrues." She contends that the "or" included in the phrases "claim or dispute" and "arises or

---

[3] Since we conclude that Ms. Grimsley cannot benefit from the Act, we do not reach the company's alternative choice of law argument. After Ms. Grimsley filed her response to Patterson's motion to compel arbitration, the company, which initially moved to compel under the FAA, changed course. Patterson instead began arguing that Section 9 of Ms. Grimsley's contract, which provides that Tennessee law should govern the parties' relationship "without having effect to any conflict of laws principles," made *any* application of the FAA to her case inappropriate—despite having based its motion to compel on the FAA. Because we conclude that the Act does not apply, it is unnecessary to address the company's alternative argument. We do note that the Tennessee Uniform Arbitration Act does not include a provision analogous to the Act. The question of whether persons asserting claims of sexual harassment should be forced to arbitrate those claims presents a question of public policy that may warrant thoughtful attention from the Tennessee General Assembly.

[4] Ms. Grimsley implies that the statutory note was not converted into a section of the Act, and as a result does not carry the weight of law. However, it "is of no moment" that the codifier chose to make this effective date provision a statutory note rather than a separate section: "The Statutes at Large provide the evidence of the laws of the United States." *Conyers v. Merit Sys. Protection Bd.*, 388 F.3d 1380, 1382 n.2 (Fed. Cir. 2004), *cert. denied* 543 U.S. 1171 (2005) (citing 1 U.S.C. § 112; *United States v. Welden*, 377 U.S. 95, 98 n.4 (1964)). Patterson correctly points to this principle and, despite Ms. Grimsley's arguments to the contrary, we agree that the statutory note carries the effect of law.

accrues" marks Congress's clear intention to treat these words differently. Ms. Grimsley asserts that

> these words must have different meanings otherwise the word 'or' and the word 'accrues' would be worthless and duplicative. The best plain language interpretation of these words would be that 'arises' would be the date the Plaintiff knew or should have known of a dispute. The word 'accrues' would be the date the lawsuit was filed (or the date the dispute accrued related to the arbitration provision). This is the best statutory interpretation for this language in the statute.

We aware of no court that has read the language of the Act in the manner suggested by Ms. Grimsley, under which a dispute does not accrue until filing of a motion to compel arbitration. Though the vast majority of the courts that have considered this issue have rejected arguments akin to those advanced by Ms. Grimsley, at least two courts have read the statute in a manner broadly in accord with the conclusion she has advanced, emphasizing the importance of the act of filing. *See Famuyide v. Chipotle Mexican Grill, Inc.*, No. 23-1127, 2023 WL 5651915, at *3-4 (D. Minn. Aug. 31, 2023), *app. filed* (8 Cir. Oct. 2, 2023); *Hodgin v. Intensive Care Consortium, Inc.*, No. 22-81733-CV, 2023 WL 2751443, at *2 (S.D. Fla. Mar. 31, 2023). In reaching their conclusions, these two courts noted the adversarial nature of the term dispute. In *Famuyide v. Chipotle Mexican Grill, Inc.*, the court concluded that the dispute arose when the plaintiff filed her claim in state court. 2023 WL 5651915, at *4. The *Hodgin v. Intensive Care Consortium, Inc.* court concluded that the dispute arose when the employee filed charges of discrimination against her employer with the United States Equal Employment Opportunity Commission. 2023 WL 2751443, at *2. In these cases, the court understood a dispute arising as being linked with the filing of an action.

Most courts that have considered the question presented in this case, however, have rejected arguments akin to those advanced by Ms. Grimsley. They have done so for at least ten different reasons. One, courts have observed that a conventional interpretation of the critical terms governing the effective date leads to an understanding that the latest potential date that a dispute or claim arises or accrues is the date when a plaintiff becomes aware of her injuries. *See Walters v. Starbucks Corp.*, 623 F. Supp. 3d 333, 338 (S.D.N.Y. 2022); *Newcombe-Dierl v. Amgen*, No. CV 22-2155-DMG (MRWx), 2022 WL 3012211, at *5 (C.D. Cal. May 26, 2022). Two, this conventional understanding is in accordance with how courts have interpreted similar language in the context of Title VII sexual harassment claims in which the key dates are linked to when the plaintiff knew or should have known of the discriminatory act or when the adverse employment action is taken. *Marshall v. Hum. Servs. of Se. Texas, Inc.*, No. 1:21-CV-529, 2023 WL 1818214, at *3 (E.D. Tex. Feb. 7, 2023); *Palmer v. Johns Island Post Acute, LLC*, No. CV 2:22-3432-RMG-KDW, 2023 WL 4409038, at *8 (D.S.C. Mar. 7, 2023), *report and recommendation adopted*, No. 2:22-CV-3432-RMG, 2023 WL

4117366 (D.S.C. June 22, 2023). As for why this well-established interpretation of Title VII language is persuasive when interpreting this Act, a court observed that the Act "should be interpreted in accordance with these well-settled accrual principles that apply to harassment claims—the very claims that are the heart of the" Act. *Olivieri v. Stifel, Nicolaus & Co., Inc.*, No. 21-CV-0046 (JMA) (ARL), 2023 WL 2740846, at *6 (E.D.N.Y. Mar. 31, 2023), *perm. app. filed* (2d Cir. Apr. 21, 2023). Three, courts have concluded that arising or accruing for a claim or dispute related to sexual harassment cannot occur after the employee is no longer employed by the employer who is subject to suit. *See Bopda v. Comcast of the Dist.*, LLC, No. CV PJM 22-2889, 2023 WL 6292767, at *3 (D. Md. Sept. 27, 2023); *Palmer*, 2023 WL 4409038, at *8. Four, Congress expressly employed the language of case filing in addressing the scope of the Act but did not do so in setting the effective date of the Act. Under the Act, "no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute." 9 U.S.C. § 402(a). Congress employed different language, however, utilizing "claim or dispute and "arises or accrues" instead of filing of a case, in setting forth the effective date of the Act. Accordingly, in rejecting a contention that the filing date is determinative as to the effective date of the Act, one court noted that "'when Congress includes particular language in one section of a statute but omits it in another,' it is 'presume[d] Congress intended a difference in meaning.'" *Barnes v. Festival Fun Parks, LLC*, No. 3:22-CV-165, 2023 WL 4209745, at *9 (W.D. Pa. June 27, 2023) (quoting *Digital Realty Trust, Inc. v. Somers*, 138 S. Ct. 767, 777 (2018)).

Courts have also explored the claim and dispute language in the context of the Act. As a fifth rationale, courts have looked to the Black's Law Dictionary definition of the terms dispute and claim, finding the definitions therein to be unsupportive of the types of arguments advanced by Ms. Grimsley. Black's Law Dictionary defines "dispute" as "[a] conflict or controversy, esp. one that has given rise to a particular lawsuit,"[5] and "claim" as "[a] demand for money, property, or a legal remedy to which one asserts a right."[6] Reflecting on these definitions, courts have observed that they "differentiate dispute and claim by the point in time they come into existence, indicating that a dispute is an underlying conflict which will later give rise to the lawsuit while a claim refers to an existing right which may be the object of a lawsuit." *Barnes*, 2023 WL 4209745 at *10. Endeavoring to apply these Black's Law Dictionary definitions, one court concluded that a "'dispute arises when the conduct which constitutes the alleged sexual assault or sexual harassment occurs' whereas 'a claim accrues when the plaintiff has a complete and present cause of action.'" *Castillo v. Altice USA, Inc.*, No. 1:23-CV-05040 (JLR), 2023 WL 6690674, at *4 (S.D.N.Y. Oct. 12, 2023). Six, the plain

---

[5] *Dispute*, Black's Law Dictionary (11th ed. 2019).

[6] *Claim*, Black's Law Dictionary (11th ed. 2019).

language of the Act "makes clear the term 'claim or dispute' refers to a claim or dispute of sexual harassment—not a dispute regarding arbitrability." *Steinberg v. Capgemini Am., Inc.*, No. CV 22-489, 2022 WL 3371323, at \*2 (E.D. Pa. Aug. 16, 2022). Notably, "Congress never referenced a 'dispute as to the arbitrability' in discussing accrual in 9 U.S.C. § 401, although they certainly could have done so. Instead, Congress specifically defined 'sexual harassment dispute' as a dispute "relating to conduct that is alleged to constitute sexual harassment." *Id*. (quoting 9 U.S.C. § 401(3) & (4)). Therefore, "[t]he dispute in question must pertain to sexual assault or harassment—the statute is not referencing a dispute regarding arbitrability." *Id*. Seven, relatedly, the Act defines a predispute arbitration agreement as "any agreement to arbitrate a dispute that had not yet arisen at the time of the making of the agreement." 9 U.S.C. § 401(1). Reflecting on this provision, a court observed that "the use of dispute in this context clearly refers to the discriminatory conduct underlying the Complaint, requiring the arbitration agreement to be entered into prior to the dispute—the discriminatory conduct." *Barnes*, 2023 WL 4209745, at \*10.

In reaching their conclusions, courts have also looked at the Act's prospective application language, state court interpretation of the same language in different contexts, and legislative history. As an eighth rationale, courts have observed that Congress by utilizing the "dispute or claim" and "arises or accrues" "after the date of enactment" language has plainly provided for prospective rather than retroactive application of the Act. *See Zinsky v. Russin*, No. 2:22-CV-547, 2022 WL 2906371, at \*4 (W.D. Pa. July 22, 2022); *see also Settle v. Securitas Sec. Servs. USA, Inc.*, No. A-0723-22, 2023 WL 2909118, at \*4 (N.J. Super. Ct. App. Div. Apr. 12, 2023) (noting that "[w]e acknowledge the [Act] represents a significant evolution in the enforcement of arbitration provisions, however, Congress has specifically elected to apply this change prospectively rather than retroactively"). As noted by one court, "[w]hile the Act represents a significant sea change in the enforcement of arbitration provisions, Congress has chosen to temper that change through prospective rather than retrospective applicability." *Zinsky*, 2022 WL 2906371, at \*4. Nine, in cases where the underlying actions involved state claims, courts have looked to state court interpretations of the terms "arise" and "accrue" which have been linked to injury and discovery. *Palmer*, 2023 WL 4409038, at \*8 (discussing South Carolina law); *Zinsky*, 2022 WL, at \*3 (addressing Texas and Pennsylvania tort law). Ten, a court considered the legislative history which it determined indicates that the only backward-looking impact of the measure is application as to arbitration agreements signed prior to the effective date of the Act but that the sexual harassment conduct itself would have to be after the passage of the Act to be within the reach of the statutory provision. *Barnes*, 2023 WL 4209745, at \*11. In reflecting on the legislative history of the Act, a court observed that "Congress considered whether public policy required voiding all existing arbitration agreements with respect to disputes involving sexual harassment under the FAA and determined that such policy was not required." *Lopez v. Biotronik, Inc.*, No. 3:21-CV-1868-JR, 2022 WL 18587756, at \*3 (D. Or. Dec. 20, 2022), *report and recommendation adopted*, No. 3:21-CV-1868-JR, 2023 WL 1778655 (D. Or.

Feb. 6, 2023).

Tennessee courts have had frequent occasion to apply the language "arise and accrue," for example in considering limitations periods and venue decisions, and have repeatedly concluded that they reference conduct predating the filing of a lawsuit. *See, e.g., Akers v. Sessions Paving Co.*, No. M2012-02602-COA-R3-CV, 2013 WL 4107622, at *3 (Tenn. Ct. App. Aug. 13, 2013), *perm. app. denied* (Tenn. Jan. 14, 2014) ("A cause of action . . . arises if the acts and conduct of one party show an intention to no longer be bound by the contract, even if the contract has not yet been breached."); *Dobson v. Marion Cnty.*, No. M2004-02154-COA-R3-CV, 2006 WL 1026422, at *4 (Tenn. Ct. App. Apr. 18, 2006) ("The test to determine when a cause of action arises or accrues is when the plaintiff has suffered a legal injury, that is, when he or she has the right to maintain an action or first may maintain an action to a successful conclusion." (quoting 51 Am. Jur. 2d *Limitation of Actions* § 148 (2005))); *Parrish v. Marquis*, No. W1999-02629-COA-R3-CV, 2000 WL 1051842, at *4 (Tenn. Ct. App. July 31, 2000) (explaining that "the time a cause of action arises will determine where the action arises or accrues"); *Pilcher v. Carroll*, 15 Tenn. App. 423, 425-26 (Tenn. Ct. App. 1932) (concluding Texas' statute of limitations "was intended to cover actions that accrued against parties while they were residents of another state and not actions that accrued while the parties were residents of this state"). The meaning that Tennessee state courts have given these words in other contexts aligns with the majority understanding of the Act.

Accepting for purposes of argument Ms. Grimsley's core contention that the terms "claim" and "dispute" and the terms "arise" and "accrue" should be interpreted as having different meanings, we would still conclude that this case does not fall within the ambit of the Act. We agree that the term "dispute" is linked with the underlying conduct giving rise to the claim, not to a dispute over arbitrability, which eliminates the latest date suggested by Ms. Grimsley -- the date of the filing of a motion to compel arbitration. We also agree that Congress simply has not provided for the filing date as controlling the effective date of the Act. In a case where the employee allegedly has been sexually harassed and has been terminated or constructively discharged with the continuing offense ceasing prior to the effective date of the Act, whatever variations may exist between the terms "claim" and "dispute" and the terms "arises" and "accrues," we cannot say that the claim or dispute arose or accrued after the last date of employment. Therefore, the trial court erred in concluding that the Act is applicable in the present case.

IV.

In considering the arguments advanced on appeal and for the reasons discussed above, we reverse the judgment of the Chancery Court for Williamson County. Costs of the appeal are taxed to the appellee, Natalie Grimsley, for which execution may issue if necessary. The case is remanded for such further proceedings as may be necessary and

consistent with this opinion.

_____

JEFFREY USMAN, JUDGE